G. D'ANDELOT BELIN & others *vs.* SECRETARY OF THE COMMONWEALTH.

Suffolk. October 4, 1972. — October 19, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Constitutional Law,* "Home Rule Amendment," Municipalities, General law, Special law. *Municipal Corporations,* "Home rule." *Statute,* General law, Special law. *Cambridge. Words,* "In relation to cities and towns."

Statute 1972, c. 596, requiring that a question regarding a change to plurality voting be placed on the ballot to be used at the biennial

state election in any city or town with proportional representation voting but in fact, when enacted, applicable only to the city of Cambridge, is a special act "relating to cities and towns" and not a general law applicable "to a class of not fewer than two" cities and towns, and thus violates art. 89 of the Amendments to the Massachusetts Constitution in that it was enacted neither on a petition filed or approved by the voters or the city council nor by the two-thirds vote of each branch of the General Court following a recommendation of the Governor. [533–535]

PETITION for a writ of mandamus filed in the Supreme Judicial Court for the county of Suffolk on September 21, 1972.

The case was reserved and reported by *Reardon,* J.

*Acheson H. Callaghan, Jr.* (*Barry R. Furrow & Jeffery Swope* with him) for the petitioners.

*Walter H. Mayo, III,* Assistant Attorney General, for the Secretary of the Commonwealth.

*George A. McLaughlin & Edward J. Lonergan,* amici curiae, submitted a brief.

*Charles H. McGlue* was present but did not argue.

REARDON, J. The petitioners, residents, taxpayers, and duly registered voters in Cambridge, have petitioned for a writ of mandamus. The facts are not in dispute.

Cambridge has a Plan E form of government conformable to G. L. c. 43, §§ 93–116, as amended, and is the only city or town in the Commonwealth where officers are elected by proportional representation or preferential voting. The respondent was in the process of preparing a question contained in St. 1972, c. 596, § 3, to be placed on the official ballot for the November 7, 1972, biennial State election in Cambridge. The question described in § 3 will not appear on the ballot in any other city or town in the Commonwealth. Statute 1972, c. 596, which was enacted over the veto of the Governor, provides as follows:

"SECTION 1. Section one hundred and fifteen of chapter forty-three of the General Laws is hereby repealed.

"SECTION 2. Chapter fifty-four A of the General Laws is hereby repealed.

"SECTION 3. The state secretary shall cause the following question to be placed on the official ballot to be used at the biennial state election in each city in which voting by proportional representation or preferential voting is in effect: —

" 'Shall the elective officers of this city be nominated by preliminary election and elected by ordinary plurality voting?'

|            | YES. |
|------------|------|
|            | NO.  |

"The state secretary shall cause the following question to be placed on said ballot in each town in which voting by proportional representation or preferential voting is in effect: —

" 'Shall the elective officers of this town be elected by ordinary plurality voting?'

|            | YES. |
|------------|------|
|            | NO.  |

"If a majority of the votes in answer to such question by any such city or town is in the affirmative elective officers in such city or town shall thereafter be nominated and elected in the manner provided in said question.

"If a majority of the votes in answer to said question is in the negative those elective officers who, on the date of said election, were elected by proportional representation or preferential voting shall continue to be so elected."

Statute 1972, c. 596, was not enacted (1) on a petition filed or approved by the voters or by the city council of Cambridge, or (2) by a two-thirds vote of each branch of the General Court following a recommendation by the Governor.

The contention of the petitioners is that because St. 1972, c. 596, was enacted in violation of art. 89 of the Amendments to the Constitution of the Commonwealth (the home rule amendment),[1] it has no force and effect, and the respondent is under a duty not to place the question described in § 3 therein on the official ballot in Cambridge for the biennial State election to be held on November 7, 1972.

---

[1] Article 2 of the Amendments to the Constitution of the Commonwealth, as supplanted in 1966 by art. 89.

Section 1 of art. 89 provides, "It is the intention of this article to reaffirm the customary and traditional liberties of the people with respect to the conduct of their local government, and to grant and confirm to the people of every city and town the right of self-government in local matters, subject to the provisions of this article and to such standards and requirements as the general court may establish by law *in accordance with the provisions of this article*" (emphasis supplied).

The provisions limiting the power of the Legislature are to be found in § 8 of the article.[2]   On its face it is plain that St. 1972, c. 596, can be classified as a law "in relation to cities and towns" and therefore subject to the restrictions of § 8.   If it be a special law, it is unconstitutional since it was not enacted on a petition filed or approved by the voters or by the city council of Cambridge or by a two-thirds vote of each branch of the General Court following a recommendation of the Governor.

If on the other hand c. 596 can be viewed as a general law applicable "to a class of not fewer than two" cities and towns, there being no obstacle in art. 89 to the enactment of such laws, it is constitutional.

The basic issue thus is whether St. 1972, c. 596, by its terms applicable to a class of "all" cities having pro-

---

[2] *"Powers of the General Court.* — The general court shall have the power to act in relation to cities and towns, but only by general laws which apply alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two, and by special laws enacted (1) on petition filed or approved by the voters of a city or town, or the mayor and city council, or other legislative body, of a city, or the town meeting of a town, with respect to a law relating to that city or town; (2) by a two-thirds vote of each branch of the general court following a recommendation by the governor; (3) to erect and constitute metropolitan or regional entities, embracing any two or more cities or towns, or established with other than existing city or town boundaries, for any general or special public purpose or purposes, and to grant to these entities such powers, privileges and immunities as the general court shall deem necessary or expedient for the regulation and government thereof; or (4) solely for the incorporation or dissolution of cities or towns as corporate entities, alteration of city or town boundaries, and merger or consolidation of cities and towns, or any of these matters. . . .

"This section shall apply to every city and town whether or not it has adopted a charter pursuant to section three."

portional representation but in fact only to Cambridge, is to be characterized as a general law applicable to a class of not fewer than two or as a special law within the meaning of § 8 of art. 89.

In *Opinion of the Justices*, 356 Mass. 775, we stated that legislation for a multi-purpose stadium, tunnel and an arena was, in most of its aspects, regional legislation having some State-wide effect and was not to be considered as a law "in relation to cities and towns," and therefore was not subject to the requirements for either general or special laws specified in § 8. We there noted, "We do not interpret the words 'to act in relation to cities and towns' as precluding the Legislature from acting on matters of State, regional, or general concern, even though such action may have special effect upon one or more individual cities or towns. If the predominant purposes of a bill are to achieve State, regional, or general objectives, we think that, as heretofore, the Legislature possesses legislative power, unaffected by the restrictions in art. 89, § 8. On the other hand, in instances where the primary purpose of a major and severable portion of a bill, otherwise enacted for State, regional, or general purposes, is to legislate 'with respect to . . . [the] local government,' or 'local matters,' of a particular city or town, it may be necessary to consider whether in the particular circumstances that severable major portion complies with § 8 of art. 89." Pp. 787–788.

In our view the last quoted sentence is fully applicable to c. 596, § 3. That section provides for a question to be placed on a municipal ballot which, if approved by the voters in Cambridge, will alter the method by which the city council and the school committee are elected in that city. It is directly and solely concerned with altering a crucial feature of municipal government. If the words "in relation to cities and towns" are to be given any meaning they must be applicable to this statute. Therefore, c. 596, § 3, must be subject to the requirements of art. 89, § 8.

We thus consider whether c. 596, § 3, applies alike

"to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two." That c. 596, § 3, is phrased in general terms, and is, arguably, potentially applicable to cities in addition to Cambridge at some indefinite future time, is not sufficient to meet the test which § 8 of art. 89 establishes. When enacted, c. 596, § 3, was applicable in fact only to Cambridge. That it was phrased in general or specific terms does not control under § 8, which prescribes a clear and simple test of minimum applicability. In *Opinion of the Justices,* 357 Mass. 831, we pointed out relative to an act affecting the towns of Southwick and West Springfield that it met the test of a general law within the meaning of the first sentence of art. 89, § 8, and, hence, did not need to be enacted in accordance with the special procedures for special laws there defined. That case involved two towns, a situation quite different from that which confronts us here.

We said in *Mayor of Gloucester* v. *City Clerk of Gloucester,* 327 Mass. 460, 464, "No municipality has any vested right in its form of local government. All such matters are subject to the paramount authority of the Legislature, which may change, and even abolish, at will." However, the relevance of this and other cases decided prior to 1966 has been considerably diminished, if not erased. The adoption of art. 89 "effected substantial changes in the legislative powers of the General Court and the cities and towns." *Opinion of the Justices,* 356 Mass. 775, 787.

In sum, art. 89 was adopted by the people to prevent precisely the type of legislation which is represented by St. 1972, c. 596, § 3.

It is for this reason that, by our order dated October 6, 1972, we have directed the issuance of a peremptory writ of mandamus commanding the respondent not to print the question contained in St. 1972, c. 596, § 3, on the official ballot for the biennial State election of Cambridge.