**114**                                        **370 Mass. 114**

Board of Selectmen of Braintree *v.* Town Clerk of Braintree.

BOARD OF SELECTMEN OF BRAINTREE *vs.* TOWN CLERK
OF BRAINTREE & others.[1]

Suffolk.    March 5, 1976. — April 8, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER,
& KAPLAN, JJ.

*Constitutional Law,* Home Rule Amendment, Municipalities, Special
law. *Municipal Corporations,* "Home rule." *Statute,* Special law.
*Braintree.*

A vote of a town meeting in Braintree to petition the General Court for
an act to increase the number of selectmen from three to five, the
subsequent enactment of St. 1975, c. 603, requiring an article to that
effect to be placed on the warrant for a special town meeting, and
then a vote there approving such article, were permitted proce-
dures and constitutional under art. 89, § 8, of the Amendments to
the Massachusetts Constitution; the distinct procedures set forth
in art. 89, § 4, are not a limitation on, or exception to, the procedures
set forth in § 8. [116-119]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on January 29, 1976.

The case was reserved and reported by *Hennessey,* C.J.

*Arthur A. Smith, Jr.,* Town Counsel, for the Board of
Selectmen of Braintree.

*William F. Carr,* Special Town Counsel, for the Town
Clerk of Braintree & another.

*John F. Donovan, Jr.,* Counsel to the House of Repre-
sentatives, *Joseph J. Schuler,* Associate Counsel to the
House of Representatives, *James R. McIntyre,* Counsel to
the Senate, *Dawn-Marie Driscoll Keefe,* Assistant to the
Senate Counsel, & *James H. Powers,* Principal Research
Assistant, Legislative Research Bureau, as amici curiae,
submitted a brief.

---

[1] The town of Braintree and the board of registrars of voters of the
town.

*Douglas A. Randall,* for the City Solicitors and Town Counsel Association & others, as amici curiae, submitted a brief.

KAPLAN, J. The board of selectmen of the town of Braintree has consisted of three members whose respective terms, beginning in successive years, were each for a period of three years. At an adjourned annual town meeting on May 7, 1975, the town voted to authorize the selectmen to petition the General Court, under the provisions of § 8 of art. 2 of the Amendments to the Constitution of the Commonwealth as supplanted by art. 89 of the Amendments (Home Rule Amendment), for an act: To authorize the town to increase the membership of its board of selectmen from three to five members at the annual town election following the acceptance of the act at a special or annual town meeting. A draft bill was filed accordingly with the General Court.

On September 16, 1975, St. 1975, c. 603, was approved stating that "[n]otwithstanding the provisions of sections two and seven of chapter forty-one of the General Laws, the number of selectmen in the town of Braintree shall not be increased prior to its next annual town meeting, except at a special town meeting called for the purpose in said town in the current year."[2] The act required that the warrant for the special meeting propose an article for the increase of membership from three to five. The act provided further: "If such article is adopted three selectmen shall be elected at the annual town meeting to be held in said town in the year nineteen hundred and seventy-six as follows: one for one year, one for two years and one for three years. Thereafter, upon the expiration of the term of a selectman, his successor shall be elected for a term of three years."

At an adjourned special town meeting held on December

---

[2] It appears that the town might have used the procedure of G. L. c. 41, §§ 2 and 7, to increase the number of members of the board. Under § 2, the change in composition "shall be determined at a meeting held at least thirty days before the annual meeting."

8, 1975, an article was presented in accordance with St. 1975, c. 603, and the article was approved.

The 1976 annual town election was to occur on April 5, 1976.

The members of the board of selectmen of Braintree, as plaintiffs, on January 29, 1976, commenced the present action in the county court against the town clerk, the members of the board of registrars, and the town, as defendants, seeking a declaration that St. 1975, c. 603, and the vote of the special town meeting of December 8, 1975, were unconstitutional and void, and demanding appropriate consequential relief. Upon a statement of agreed facts (including the facts recounted above), the case was reserved and reported by a single justice, without decision, to the full court. The full court heard argument on March 5, 1976.[3] As the date of the annual town election was fast approaching, the court, upon due deliberation, issued its order on March 12, 1976, decisive of the case, and indicated that an opinion would follow.

We believe the procedure adopted by the town to achieve its purpose was a permitted one, and the claim of unconstitutionality was groundless.

Section 8 of the Home Rule Amendment provides in part: *"Powers of the General Court.* The general court shall have the power to act in relation to cities and towns, but only by general laws which apply alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two, and by special laws enacted (1) on petition filed or approved by the voters of a city or town, or the mayor and city council, or other legislative body, of a city, or the town meeting of a town, with respect to a law relating to that city or town . . . ." The vote of the annual town meeting of Braintree of May 7, 1975, authorizing a petition to the General Court, initiated a process under § 8 (1) which was correctly followed to the point of making legally effective the increase of membership.

---

[3] An amicus brief supporting constitutionality was filed by counsel to the House of Representatives and the Senate, and a brief, opposed, by the City Solicitors and Town Counsel Association.

The plaintiffs argue that there is a class of cases excepted from § 8. They point to § 4 of the Home Rule Amendment, particularly subsection (2). Section 4 provides:

*"Procedure for Amendment of a Charter by a City or Town.* Every city and town shall have the power to amend its charter in the following manner: The legislative body of a city or town may, by a two-thirds vote, propose amendments to the charter of the city or town; provided, that (1) amendments of a city charter may be proposed only with the concurrence of the mayor in every city that has a mayor, and (2) any change in a charter relating in any way to the composition, mode of election or appointment, or terms of office of the legislative body, the mayor or city manager or the board of selectmen or town manager shall be made only by the procedure of charter revision set forth in section three.

"All proposed charter amendments shall be published and submitted for approval in the same manner as provided for adoption or revision of a charter."

The § 3 procedure for charter revision, here referred to, is an elaborate one involving a petition by fifteen per cent of the voters of the town and the election of a charter commission.

It is evident from the very title of § 4 that it provides procedures through which a town may carry out a charter amendment by action on the town level without resort to the General Court. These procedures are distinct from the § 8 procedures involving the General Court. There is no language in § 4 or § 8 to suggest that § 4 is a limitation on, or exception to, § 8, nor can such a limitation or exception be reasonably implied.

This conclusion is in accord with a detailed analysis of the amendment made by counsel to the Special Commission on Implementation of the Municipal Home Rule Amendment to the State Constitution, a body charged with recommending any needed statutory implementation of the amendment (see Resolves 1965, c. 131). The analysis stated: "The fact that [Home Rule Amendment, § 4] procedures may not be used to change a city's mode of electing

its mayor [i.e., the fact that, under § 4 (2), the procedures of § 3 would have to be followed] does not mean that the city is unable to make a change except through the adoption of a home rule charter. The general court through the enactment of a general or special Section 8 Law may provide the means for reaching the desired result. Clause (2) of [Home Rule Amendment, § 4] should not be construed to limit the power of the general court; it is merely a limit on a power conferred on cities and towns to make law for themselves at the charter level." 1967 Senate Doc. No. 1547, at 19. A like view was taken in *Belin* v. *Secretary of the Commonwealth,* 362 Mass. 530, 533 (1972), which stated that a special law passed in conformity with § 8 could alter the method of electing city officers, although § 4 (2) would apply if the local route were followed.

As § 8 is applicable to the present case and is complete in itself, we need not inquire whether Braintree, which has never voted to adopt a charter in accordance with the procedures of § 3, and which has a representative town meeting by virtue of a special law (St. 1937, c. 17) and a board of selectmen by virtue of general law (c. 41, § 1), would or would not encounter any difficulty in resorting to the charter amendment route of § 4 of the Home Rule Amendment for the sole purpose of increasing the membership of its board of selectmen.

Argument is pressed upon us that there would be some advantage in denying the General Court any role in the matter of enlarging Braintree's board of selectmen and in leaving the town with the sole power. The decision of policy is not for us. It may, however, be mentioned that the draftsmen of the Home Rule Amendment were aware of arrangements in other jurisdictions by which the localities had been given complete power in certain areas to the exclusion of the Legislature. In such schemes the fear of local abuse had led sometimes to narrow and technical interpretations of local power. The draftsmen did not follow those models. See 1967 Senate Doc. No. 1547, at 24-25.

An order of this court has issued declaring St. 1975, c. 603, and the vote at the special town meeting of De-

cember 8, 1975, to be constitutional, and authorizing the defendant town clerk to act accordingly in respect to the annual town election of April 5, 1976. An appropriate rescript will be entered.