MAYOR OF BOSTON & another *vs.* TREASURER AND
RECEIVER GENERAL.

Suffolk.  November 4, 1981. — December 15, 1981.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Home Rule Amendment, Appropriation of money.
   *Municipal Corporations*, Home rule.  *General Court.*     *Statute*,
   Severability.

In making an appropriation for financial aid to cities and towns, the
   Legislature violated the Home Rule Amendment of the Constitution of
   the Commonwealth by conditioning the distribution of funds to the
   city of Boston on the city's maintaining a certain level of "police and
   fire protective services" and attaching no such condition to the receipt
   of funds by other municipalities. [722-725] HENNESSEY, C.J., LIACOS
   and LYNCH, JJ., dissenting.
An appropriation by the Legislature for financial aid to cities and towns
   was not severable from an unconstitutional condition attached to it,
   requiring the city of Boston to maintain a certain level of "police and
   fire protective services," although the local aid item as a whole was
   severable from the rest of the budget. [725-726]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on August 14, 1981.

The case was reported by *Lynch*, J.

*Harold J. Carroll*, Corporation Counsel (*Jacqueline A.
Lillard*, Assistant Corporation Counsel, with him) for the
plaintiffs.

*Donald K. Stern*, Assistant Attorney General (*James A.
Aloisi, Jr.*, Assistant Attorney General, with him) for the de-
fendant.

WILKINS, J.  In providing an additional $348,000,000 in
financial aid to the cities and towns in the budget for the
current year, the Legislature imposed a specific limitation
on the distribution of funds to the city of Boston. St. 1981,

c. 351, § 2, item 0611-5500.  That limitation conditioned
the distribution to Boston on the city's maintaining "the
same level of police and fire protective services as during
fiscal [1980]" and maintaining "as operating facilities all
police and fire stations operating during fiscal [1980]."[1] The
city and its mayor brought this action to challenge the
limitation on Boston on the ground that it violates the Home
Rule Amendment, art. 2 of the Amendments to the Consti-
tution of the Commonwealth, as appearing in art. 89 of the
Amendments, approved by the people in 1966.[2]  They
argue that the proviso should be treated as a nullity and that
Boston's share of the additional local aid should be dis-
tributed to it free of the limitation.[3]

---

[1] The provisions of item 0611-5500 state in part:  "For additional
assistance to the cities and towns, there is hereby appropriated the sum of
three hundred and forty-eight million dollars from the General Fund to
be credited to the Local Aid Fund as established under the provisions of
section two D of chapter twenty-nine of the General Laws and to be dis-
tributed to said cities and towns in accordance with the provisions of sec-
tion eighteen C of chapter fifty-eight of the General Laws; *provided,
however, that no funds shall be distributed to the city of Boston unless
said city shall maintain the same level of police and fire protective services
as during fiscal nineteen hundred and eighty, and also maintain as
operating facilities all police and fire stations operating during fiscal nine-
teen hundred and eighty, unless otherwise approved by the secretary of
public safety . . .*" (emphasis supplied).

General Laws c. 58, § 18C, provides for the distribution of amounts
credited to the Local Aid Fund to the cities and towns of the Common-
wealth according to a formula that is based, roughly, on census figures
and property subject to local taxation.  The Local Aid Fund was original-
ly established to receive revenues from the State lottery (St. 1971, c. 813,
§ 1, inserting G. L. c. 29, § 2D), but has since been expanded to receive
funds from tax sources.  St. 1978, c. 367, § 58, amending G. L. c. 29,
§ 2D.

[2] The limitation authorizes the secretary of public safety to approve a
lower level of police and fire services and facilities in Boston than existed
in fiscal 1980.  This avenue of relief from the statutory limitation on
Boston does not have any significant bearing on the home rule issue before
us because it too is limited exclusively to the city of Boston.

[3] The plaintiffs also argue that the limitation on Boston violates G. L.
c. 29, § 27C, inserted by St. 1980, c. 580, § 2 (commonly known as "Prop-
osition 2½").  We need not reach the issue of the effect, if any, of Prop-
osition 2½ on a statute subsequently adopted.

We agree that the limitation exclusively imposed on Boston was adopted in violation of the Home Rule Amendment and is invalid. We do not agree, however, that the proviso can properly be severed from the grant to Boston and Boston's funds then distributed to it free of the limitation. Moreover, we agree with the Attorney General, arguing on behalf of the defendant Treasurer and Receiver General, that, if the limitation on Boston is unconstitutional, the entire allocation of $348,000,000 in additional local aid must be struck down. We have no hesitancy in concluding, however, that the unconstitutionality of the limitation on Boston does not invalidate any other portions of the budget, which we believe the Legislature would have adopted in any event.

We are aware of the disruptive consequences of the result we reach in this case. It would have been less disruptive to reach a contrary conclusion. It is, however, often precisely when seductive, extraneous pressures are most intense that the need is greatest for judges to focus on constitutional principles. We believe any disruption need only be temporary. The Legislature is still in session. The problem is not insoluble.

The plaintiffs commenced this action in the Supreme Judicial Court for the County of Suffolk seeking declaratory and injunctive relief against the operation of the limitation imposed on Boston's receipt of its share of the funds additionally made available by St. 1981, c. 351, § 2, item 0611-5500. A single justice reserved and reported the case to this court on the complaint, the answer, and a statement of agreed facts.

We summarize certain of these facts. Item 0611-5500 was not enacted on a petition filed or approved by the voters or by the mayor and city council. Nor was item 0611-5500 enacted by a two-thirds vote of each branch of the General Court following a recommendation of the Governor.[4] The number of

---

[4] These facts are relevant because they exclude the possibility that item 0611-5500, or any part of it, was enacted pursuant to procedures that are authorized under the Home Rule Amendment for the enactment of legislation directed toward only one municipality.

noncivilian personnel of the Boston police department was 1,768 on September 18, 1981, and had been in excess of 2,100 both at the beginning and at the end of the 1980 fiscal year. Also, there were 1,554 noncivilian personnel in the Boston fire department in the middle of September, 1981, and there had been more than 1,900 noncivilian employees in that department both at the beginning and at the end of the 1980 fiscal year. Two district police stations open in fiscal year 1980 have been closed, as have two fire stations. The Commissioner of Revenue has advised the mayor of Boston that distribution of funds to Boston made available pursuant to item 0611-5500, half of which would otherwise have been distributable before December 31, will not be made unless the city complies with the limitation on Boston stated in item 0611-5500 (or unless the Secretary of Public Safety approves). The total amount estimated to be payable to Boston under item 0611-5500 is approximately $56,700,000. The statement of agreed facts does not show what additional costs would be imposed on Boston if it were to comply with the limitation contained in item 0611-5500.[5] There is nothing in the record or in any legislative document which shows that additional assistance was given to Boston in item 0611-5500 to compensate Boston for the cost of complying with the limitation concerning police and fire services. We note that in an additional proviso contained in item 0611-5500, and quoted below,[6] the Legislature modi-

---

[5] In their complaint the plaintiffs allege that it would cost the city in excess of $50,000,000 during the current fiscal year to restore police and fire operations to the level set forth in item 0611-5500, but the defendant has not agreed, by his answer or otherwise, to this allegation.

[6] "[P]rovided, further, that, notwithstanding the provisions of any special or general law to the contrary, any census figures used to determine the amounts of assistance to be distributed pursuant to this item shall be equal to the state census figures for nineteen hundred and seventy-five for any city or town which has filed suit against the United States bureau of the census to challenge the figures certified by said bureau for the national census of nineteen hundred and eighty; provided, further, that the attorney general shall have filed as a co-plaintiff in such suit; and provided, further, that if the figures certified for said national census, after adjustments related to definitions, are greater than said state census figures, said national census figures shall be used . . . ."

fied the formula that would otherwise have been used in allocating the additional funds among cities and towns. The modification appears to be designed to benefit certain municipalities that are challenging the results of the 1980 Federal census. We infer that Boston is one of those municipalities but do not know how much this adjustment in the formula has benefited Boston.

The Home Rule Amendment provides (in relevant part) that the General Court has "the power *to act in relation to cities and towns, but only by general laws which apply* alike to all cities, or to all towns, or to all cities and towns, or *to a class of not fewer than two*" (emphasis supplied). In passing item 0611-5500, to provide reimbursement to cities and towns, the General Court was acting "in relation to cities and towns." The act containing the budget was a general law. Finally, it is apparent that, in limiting Boston's use of the funds, the law does not "apply alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two." It applies to a class fewer than two, that is, to Boston alone. Boston alone is told how to use funds made available to it. It alone is denied the opportunity to decide how to allocate funds generally made available to meet the financial problems of Proposition 2½. Boston alone is told that, if it wants the stated financial aid, it must achieve compliance with the restrictions of Proposition 2½, largely if not entirely, by budgetary reductions in departments other than police and fire.

A straight-forward reading of the Home Rule Amendment indicates that the restriction on legislative action imposed by that Amendment has been violated by the limitation concerning police and fire protection in Boston. There are procedures described in the Home Rule Amendment by which the limitation might have been lawfully enacted. The procedure followed here is not one of them. Although "the scope of the disability imposed on the Legislature by the [Home Rule] [A]mendment is quite narrow" (*Arlington* v. *Board of Conciliation & Arbitration,* 370 Mass. 769, 773 [1976]), that disability is total and its scope is explicit. It

would be ironic if so recently after careful attention has been given to preventing the budgetary process from being misused to reduce the constitutional authority of the Governor,[7] this court should endorse a budgetary device that seriously undercuts the protections of the Home Rule Amendment.

The conclusions we reach are supported by a thoughtful analysis of the Home Rule Amendment, published shortly after its enactment in 1966. See Eighth Report of the Special Commission on Implementation of the Municipal Home Rule Amendment to the State Constitution, Senate Doc. No. 1547 (November 30, 1967), containing "an analytical discussion of the Home Rule Amendment made for the Home Rule Commission by its legal consultant firm." In discussing the enactment of laws in relation to cities and towns, that document states "[a] law *granting moneys to* or imposing expenses upon *cities and towns would seem to be a law in relation to cities and towns*" (emphasis supplied). *Id.* at 25. Indeed, on what theory would a law granting funds to municipalities not be a law in relation to cities and towns? In discussing the special circumstances of General Laws which have excepted Boston from their application, the 1967 analysis of the Home Rule Amendment states: "*But a general law may not create a new special rule for Boston only* or change one exception for Boston only into a different exception for Boston only, *because such a law does apply to Boston and fails to apply alike to it and at least one other city or town*" (emphasis supplied). *Id.* at 27.

The defendant argues that the limitation applicable to Boston is a matter of regional concern and that, therefore, it does not fall within the restrictions of the Home Rule Amendment. He points to the importance of Boston as a regional center for business, tourism, and commerce in

---

[7] *Opinion of the Justices, post* 828 (1981). *Attorney Gen.* v. *Administrative Justice of the Boston Municipal Court Dep't of the Trial Court, ante* 511 (1981). *Opinion of the Justices, post* 820 (1981).

which the matter of police and fire protection is of interest to many people other than the residents of Boston and its city government. Interpretations of the Home Rule Amendment which say that it is not applicable to legislation principally of State or regional, rather than local concern[8] cannot be stretched as far as the defendant argues. To do so in this case would substantially abrogate the Home Rule Amendment as applied to Boston because the limitation imposed here affects Boston in the conduct of its local affairs.

We also reject the defendant's argument that the authority of the Legislature in granting funds to municipalities is unrestrained by the Home Rule Amendment. Nowhere in the Home Rule Amendment is there the slightest suggestion that its provisions are inapplicable to a conditional grant of funds to a municipality. If we were to conclude that conditions and limitations could be imposed on an individual municipality in the process of distributing local aid, a substantial and unwarranted exception would be added judicially to the Home Rule Amendment. Surely, no one would sustain, against a Home Rule challenge, a separate special or general law which imposed on Boston the limitation involved here. The limitation acquires no constitutional respectability merely because it is wrapped in the mantle of a grant of local aid.

We acknowledge and reaffirm the broad power of the Legislature in matters relating to appropriations. It has been said, in a different context, that "it would require words in the Constitution of unequivocal meaning to prevent the General Court from attaching conditions to the expenditure of moneys appropriated by it." *Opinion of the Justices*, 294 Mass. 616, 621-622 (1936). The Home Rule Amendment contains just such words of unequivocal meaning.

---

[8] *Opinion of the Justices*, 374 Mass. 843, 849-850 (1978). *Hadley* v. *Amherst*, 372 Mass. 46, 50 (1977). *Belin* v. *Secretary of the Commonwealth*, 362 Mass. 530, 534 (1972). *Opinion of the Justices*, 357 Mass. 831, 834 (1970). *Opinion of the Justices*, 356 Mass. 775, 787-788 (1969). See *City Council of Boston* v. *Department of Pub. Utils.*, 7 Mass. App. Ct. 379, 382 (1979).

We find no persuasive analogy in cases dealing with conditional grants by Congress of funds to the States. 'The restrictions of the Tenth Amendment are very different from those of the Home Rule Amendment. Quite simply, the Tenth Amendment contains no explicit provision barring Congress in any way from passing a law in relation to a single State. The Home Rule Amendment, however, has an explicit provision barring the Legislature from passing a law in relation to a single municipality (except pursuant to certain procedures). In any event, even under the Tenth Amendment, we are aware of no case in which a condition of Federal funding directed explicitly to a single State has been upheld, if indeed such a law has ever been passed.

We reject the plaintiffs' argument that the conditional language concerning Boston is severable from the rest of the item. We accept the argument of the Attorney General that, if the limitation is unconstitutional, the entire local aid item ($348,000,000) must be struck down. "[W]here a statutory provision is unconstitutional, if it is in its nature separable from the other parts of the statute, so that they may well stand independently of it, and if there is no such connection between the valid and the invalid parts that the Legislature would not be expected to enact the valid part without the other, the statute will be held good, except in that part which is in conflict with the Constitution." *Krupp* v. *Building Comm'r of Newton*, 325 Mass. 686, 691 (1950), quoting from *Commonwealth* v. *Petranich*, 183 Mass. 217, 220 (1903). If the court is unable to know whether the Legislature would have enacted a particular bill without the unconstitutional provision, it will not sever the unconstitutional provision, but will strike the entire statute. *Pedlosky* v. *Massachusetts Inst. of Technology*, 352 Mass. 127, 129 (1967).

We cannot say that the General Court would have enacted the same budget item without the limitation if it had known the limitation to be illegal. Perhaps the Legislature granted Boston extra funds, by its adjustment of the distribution formula, because of the additional burden of the

.

limitation concerning police and fire services in Boston. As to the entire budget item, perhaps the Legislature would have appropriated some amount other than $348,000,000 or it might have directed the funds to be distributed among the municipalities according to a different formula. It is sheer conjecture to say what, if any, alternative the Legislature would have adopted. We would be engaging in legislating ourselves if we were to determine that (1) Boston may receive its share of the additional local aid funds free of the limitation or (2) the portion of the additional local aid funds not going to Boston should be distributed without regard to the invalidity of the conditional grant to Boston. We have, however, no problem in finding that the local aid item as a whole is severable from the rest of the 1982 fiscal year budget. Thus a finding that the limitation concerning Boston is unconstitutional requires only the striking of the entire local aid item applicable to all cities and towns of the Commonwealth.

Judgment is to be entered declaring that (1) the limitation on the receipt of funds by the city of Boston stated in St. 1981, c. 351, § 2, item 0611-5500, violates the provisions of the Home Rule Amendment to the Constitution of the Commonwealth; (2) the limitation may not be severed from item 0611-5500; and (3) funds may not be distributed to the cities and towns according to the provisions of item 0611-5500.

*So ordered.*

HENNESSEY, C.J. (dissenting, with whom Liacos and Lynch, JJ., join). I dissent. The Home Rule Amendment forbids the Legislature to "act in relation to" any single city or town. In my view, the Legislature did not "act in relation to" Boston within the meaning of the Amendment. The Legislature merely placed a condition upon a grant of money, and imposed no obligation or mandate. Consequently, there was no violation of the Home Rule Amend-

ment. The majority, by their reasoning, have placed an impermissible limit upon the broad constitutional power of the Legislature to appropriate State money, and control its use.

*The Home Rule Amendment.*

This court has on several prior occasions had the opportunity to consider whether a particular special law was "in relation to" a city or town.[1] In those cases the issue was phrased in terms of whether the law affected a particular municipality in the conduct of its local affairs or whether it concerned matters of State, regional, or general concern. Were I to apply the method of those cases to the budget item challenged here, I might well conclude that it relates to the local affairs of Boston, and thus find a violation of art. 89, § 8. But I think that the approach of those cases is inapplicable where the Legislature merely makes what is in effect an offer of money to a municipality that may be accepted or rejected on a completely voluntary basis. For this reason I believe that the words "act in relation to" do not encompass the placing of conditions or restrictions on a voluntary grant of money to a municipality.

It is beyond dispute that the power to spend money, founded in Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth, is an important and central feature of the legislative function. The placing of conditions or restrictions upon the use of State money is an integral part and privilege of the exercise of that power. We should therefore not lightly read limitations on that power into the Constitution. *Opinion of the Justices*, 294 Mass. 616, 621-622 (1936) ("it would require words in the Constitution of unequivocal meaning to prevent the General Court from attaching conditions to the expenditure of moneys appropriated by it"). The history surrounding the enactment of the Home Rule

---

[1] *Opinion of the Justices*, 374 Mass. 843 (1978). *Hadley* v. *Amherst*, 372 Mass. 46 (1977). *Belin* v. *Secretary of the Commonwealth*, 362 Mass. 530 (1972). *Opinion of the Justices*, 357 Mass. 831 (1970). *Opinions of the Justices*, 356 Mass. 775 (1969). See *City Council of Boston* v. *Department of Pub. Utils.*, 7 Mass. App. Ct. 379 (1979).

Amendment suggests that no such limitation was contemplated. Among the asserted evils that were the target of the Amendment were special laws that interfered in local personnel administration (especially in matters dealing with compensation, civil service status, and tenure), and special laws that reorganized or interfered with the structure or election of municipal government. 1961 Senate Doc. No. 580, at 71-88. 1965 Senate Doc. No. 950, at 84-115. Cf. *Belin* v. *Secretary of the Commonwealth*, 362 Mass. 530 (1972). These and other alleged abuses imposed substantive or procedural mandates on particular cities or towns. The Home Rule Amendment, then, was intended to limit the power of the Legislature to act by special laws having some affirmative or obligatory effect on a single city or town in the conduct of its local affairs. By contrast, the budget item challenged here imposes no obligation or mandate on the city of Boston.

Nor can I accept the argument that the condition is coercive. "[T]o hold that motive or temptation is equivalent to coercion is to plunge the law in endless difficulties." *Steward Mach. Co.* v. *Davis*, 301 U.S. 548, 589-590 (1937). Boston can opt not to receive its share of State aid; or it can elect to comply with the condition and receive its share. In either case it will be no worse off than if the General Court had not passed the budget item at all. Since the condition is purely permissive in nature, there is no direct interference in the local affairs of Boston. Where a wholly voluntary condition is used pursuant to the exercise of the Legislature's spending power, I think, in light of the objectives of the Home Rule Amendment, that no constitutional violation should be found when such condition is applied even to a single municipality.

Analogy in the instant case may be drawn to the Federal cases arising under the Tenth Amendment to the United States Constitution.[2] Somewhat like our Home Rule Amend-

---

[2] This is not the first time we have found it helpful to analogize to Federal law in interpreting the Home Rule Amendment. See *Bloom* v. *Worcester*, 363 Mass. 136, 155-156 (1973).

ment, the Tenth Amendment has been interpreted as a limitation on the power of Congress to interfere with the integral governmental functions of the State. *National League of Cities* v. *Usery*, 426 U.S. 833 (1976).[3] But similar to our holding here, the Federal cases also indicate that the Tenth Amendment places few, if any, limits on the power of Congress to attach conditions to grants of money, even when those conditions concern matters ordinarily considered within the sphere of State sovereignty. *Oklahoma* v. *Civil Serv. Comm'n*, 330 U.S. 127, 142-144 (1947). *New Hampshire Dep't of Employment Security* v. *Marshall*, 616 F.2d 240 (1st Cir.), cert. denied, 449 U.S. 806 (1980). *County of Los Angeles* v. *Marshall*, 631 F.2d 767 (D.C. Cir.), cert. denied, 449 U.S. 837 (1980). See *Steward Mach. Co.* v. *Davis, supra.* Although there are no cases so holding, it can be persuasively argued that the same conclusion would result where the condition applies to a single State. See *South Carolina* v. *Katzenbach*, 383 U.S. 301, 324-327 (1966) (rejecting argument that Congress could not fashion remedies and apply them to particular localities).[4]

The basic principle of the Federal cases just cited is applicable here. The Home Rule Amendment was enacted upon recognition of the values inherent in the preservation of decentralized government. None of those values are offended here. The conditional grant of funds does not impair the ability of municipal officials to respond to local expectations concerning the conduct or affairs of municipal

---

[3] It is perhaps noteworthy in this respect that one of the basic concepts of our Home Rule Amendment, embodied in §§ 6 and 7 of art. 89, resembles the "devolution of powers" principle of the Tenth Amendment, whereby "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

[4] Although *Katzenbach* concerned the enforcement powers of Congress under the Fifteenth Amendment, rather than the spending power, the Court stated, "The basic test to be applied in a case involving § 2 of the Fifteenth Amendment is the same as in all cases concerning the express powers of Congress with relation to the reserved powers of the States." *South Carolina* v. *Katzenbach*, 383 U.S. 301, 326 (1966).

government. See L. Tribe, American Constitutional Law § 5-22, at 315-316 (1978). Instead, it merely provides an opportunity for enhanced provision of essential government services with no fiscal burden imposed. I do not believe that § 8 of the Home Rule Amendment was intended to foreclose such purely beneficial and permissive offers of State aid.

I do not say that there are no limits on the power of the General Court to place conditions upon a grant of money to a single municipality. If, for example, the conduct sought to be stimulated or discouraged were unrelated to the intended use of the funds being granted, then a constitutional challenge might succeed. See *Steward Mach. Co.* v. *Davis, supra* at 591; L. Tribe, American Constitutional Law, *supra* at 316. Cf. *Attorney Gen.* v. *Administrative Justice of the Boston Municipal Court Dep't of the Trial Court, ante* 511, 515 (1981) ("where a provision of án appropriation bill does not direct the way an appropriation is to be used or qualify the appropriation, the provision is separable and susceptible to an item veto"). The existence of a connection between the purpose intended by the grant of funds and the conduct sought to be regulated ensures that the power being exercised is indeed a spending power, rather than an impermissible regulation of local affairs. I think the existence of that connection is clearly implied in the legislative action here.

A condition on a legislative grant of funds to a city or town might also be susceptible to constitutional attack if the amount of funds were inadequate to meet the condition imposed. See L. Tribe, American Constitutional Law § 5-22, at 315-316 (1978). Arguably, the use of a disproportionate condition would be more in the nature of an exercise of regulatory power, rather than a spending power, and thus impermissibly intrusive into local affairs, despite its still voluntary character. However, the plaintiffs have made no showing that Boston's share of the Local Aid appropriation will be inadequate to restore its police and fire protective services to their 1980 levels.

*Proposition 2½.*

The plaintiffs also argue that, even if the budget item is constitutional, it nevertheless is in violation of G. L. c. 29, § 27C, inserted by St. 1980, c. 580, § 2 (Proposition 2½).[5] This statute states that "[a]ny law *imposing* any direct service or cost obligation upon any city or town" shall be effective only if accepted by the city or town or if the Legislature provides for the assumption of such costs by the Commonwealth (emphasis added). Even if I assume that § 27C is binding on subsequent and inconsistent legislative action, I find no conflict with its provisions. The statute is clearly aimed at laws that are mandatory. Suffice it to say that the local aid provision challenged here is not of that nature.

*Severability.*

I agree with the majority that, since the court has decided against the validity of the condition in the budget item, we cannot conclude that the condition is severable and thereby allow Boston to receive its share free of any restrictions. On the basis of the limited information before this court I cannot say that the General Court would have enacted the same budget item without the condition had it known the condition to be illegal. The Legislature had any number of alternatives available to it. It is sheer conjecture to say that one of these alternatives would not have been adopted. To find the condition severable in such circumstances would constitute nothing short of judicial legislation. On the other hand, I, like the majority, have little problem in concluding that the local aid item is wholly severable from the rest of the 1982 budget. Thus, I agree that a finding of unconsti-

---

[5] General Laws c. 29, § 27C, provides: "Any law imposing any direct service or cost obligation upon any city or town shall be effective in any city or town only if such law is accepted by vote or by the appropriation of money for such purposes . . . unless the general court, at the same session in which such law is enacted, provides, by general law and by appropriation, for the assumption by the commonwealth of such cost, exclusive of incidental local administration expenses and unless the general court provides by appropriation in each successive year for such assumption." G. L. c. 29, § 27C (*a*).

tutionality requires the striking of the entire local aid item applicable to all cities and towns of the Commonwealth.

*Conclusion.*

I believe that the Legislature as to this discretionary grant could validly decide to give nothing to Boston, or any other single town or city. Given this illustration of the broad spending powers of the Legislature, it seems incongruous to hold that it cannot constitutionally impose upon any one municipality a condition upon the use of money granted.


LIACOS, J. (with whom Lynch, J., joins, dissenting). The court concludes that item 0611-5500, St. 1981, c. 351, § 2, is unconstitutional as violative of art. 89 (Home Rule Amendment). While I join the Chief Justice in his separate opinion, it is appropriate for me to state a few supplementary thoughts. I agree, if the court's premise of invalidity were correct, the limitation in item 0611-5500 is not severable, and the whole grant of local aid contained in item 0611-5500 would fail. But, I think the court's premise is wrong not only for the reasons advanced by the Chief Justice, but for the following reasons.

At the outset, the court's opinion is startling in that it appears totally to ignore a fundamental judicial principle applicable to determining the validity of any attack on the constitutionality of a legislative enactment. That principle requires that a court give a strong presumption of constitutionality to a legislative enactment. *Massachusetts Pub. Interest Research Group* v. *Secretary of the Commonwealth,* 375 Mass. 85, 93 (1978). *Zayre Corp.* v. *Attorney Gen.,* 372 Mass. 423, 432-433 (1977). This court also has recognized that the "power of appropriation is exclusively a legislative power, to be exercised only by the Legislature and in *the particular manner prescribed under our Constitution*" (emphasis supplied). *Opinion of the Justices,* 375 Mass. 827, 833 (1978). The "particular manner prescribed" is set forth in art. 63 of the Amendments. Hence, what is also remarkable to me is that

the court fails to take cognizance of the fact that what is involved here is not simply an apparent clash between a "general law" and art. 89, as the court describes it (*supra* at 722) but between two constitutional provisions, arts. 63 and 89. Nor does the court seek to harmonize the apparent clash between these constitutional provisions. *Opinion of the Justices*, 303 Mass. 631, 640 (1939). See *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981). Instead, it relies in part, in an unusual manner, on a document written *after* the enactment of art. 89 to interpret the meaning of that article.

In my view, the enactment of a budget is a unique legislative process which, arguably, involves the enactment of neither a "general" nor a "special" law. Article 63 prescribes a process which does not apply to any other kind of "law." For example, a special time limit is set by § 2 of art. 63 for the submission of a proposed budget by the Governor. The Governor is not otherwise limited in submitting proposed "laws" to the General Court. See Pt. II, c. 2, § 1, art. 5. The Governor is given a "line item" veto power as to budget items, art. 63, § 5, but has no such power as to any other law, general or special. The budgetary process previously has been described as "unique," *Opinion of the Justices*, *post* 820, 824 (1981); the item veto power in this context has been described as a "special veto power." *Attorney Gen.* v. *Administrative Justice of the Boston Municipal Court Dep't of the Trial Court*, *ante* 511, 515 (1981). See also *Opinion of the Justices, post* 828 (1981). The budgetary appropriation process also is a process, unlike any other "law," that requires that it can only be enacted (except for legislative salaries and expenses) on "recommendation of the governor," art. 63, § 3. Also, unlike the enactment of any other "law" the budget bill must have "[a]ll appropriations . . . paid from taxes or revenues" incorporated in the bill. Art. 63, §§ 2, 3.[1] In short, a budget must be "balanced," showing adequate revenues to pay for expenditures. Addi-

---

[1] Cf. art. 115 of the Amendments.

tionally, the budget bill, unlike any other "law," general or special in nature, is self-liquidating as it is in force only for the fiscal year to which it applies. Last, an examination of art. 63 finds the budget referred to nowhere as a "general" law or a "special" law. It is referred to, instead, as "the budget," or as the "general appropriation bill."[2]

One wonders, in this light, how the court could treat item 0611-5500 as a "special law" in relation to Boston when such item is a part of unique legislative power to appropriate State moneys in a general appropriation bill.[3]

The court admits that the "'scope of the disability imposed on the Legislature'" by the Home Rule Amendment is quite narrow (*supra* at 722). *Arlington* v. *Board of Conciliation & Arbitration,* 370 Mass. 769, 773 (1976). The court also acknowledges and "reaffirm[s] the broad power of the Legislature in matters relating to appropriations." (*Supra* at 724.) The court quotes from the *Opinion of the Justices,* 294 Mass. 616, 621-622 (1936), where the Justices stated, "[I]t would require words in the Constitution of unequivocal meaning to prevent the General Court from attaching conditions to the expenditure of moneys appropriated by it." Yet, according to the court, a "straight-forward reading of the Home Rule Amendment" (*supra* at 722) requires the conclusion it reaches. The court reaches this conclusion, despite the complete silence of art. 89 as to the appropriation powers of the Legislature. The statements of the court (*id.* at 724) that no "special or *general* law" imposing such limitations as those involved here would be valid miss the mark (emphasis supplied).[4] Such com-

---

[2] Later appropriations authorized after the "general appropriations bill" are referred to as "special appropriation bills." Art. 63, § 4.

[3] It should also be noted that matters pertaining to appropriations are exempt from initiative and referendum petitions under art. 48, The Initiative, II, § 2; art. 48, The Referendum, III, § 2.

[4] I agree there *is* no doubt that a special law would be invalid; a "general" law would most likely be valid within the express language of art. 89, § 8.

ments miss the mark because there is, as the Chief Justice points out, nothing "imposed" on Boston; also, they miss the mark because the budget is not covered by art. 89. To focus this point further, I submit a question: Could not the Legislature, in distributing discretionary grants in aid have simply excluded Boston? The answer seems to be clearly, "Yes." How then can a conditional grant of money — to be accepted or rejected — at Boston's option be one that intrudes on the purpose of Home Rule, as stated in art. 89, § 1: "to grant and confirm to the people of every city and town the right of self-government in local matters"? I would hold item 0611-5500 to be constitutional in its entirety.