SCHOOL COMMITTEE OF LEXINGTON & another[1] vs.
COMMISSIONER OF EDUCATION & another[2]
(and a companion case[3]).

Suffolk. January 10, 1986. — May 19, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Proposition 2½. School and School Committee*, Transportation of students. *General Court.*

General Laws c. 29, § 27C, the "local mandate" provision of St. 1980, c. 580 (Proposition 2½), did not make ineffective St. 1985, c. 140, line item 7035-0004, which appropriated funds for reimbursement of cities and towns for certain expenditures, during fiscal year 1985, for transportation of pupils pursuant to various statutory programs including G. L. c. 76, § 1, as amended by St. 1983, c. 663, but which made no appropriation for expenses incurred in fiscal year 1986, and, instead, conditioned any future reimbursement for transportation costs incurred during fiscal year 1986 upon "voluntary" provision of transportation to children who attend approved private schools in accordance with St. 1983, c. 663, which had merely increased the pre-1981 obligation of cities and towns to provide transportation for private school children. [594-597] ABRAMS, J. concurring.

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on October 7, 1985.

The cases were reported by *Abrams*, J.

*Laurie S. Gill (Jeffrey Swope* with her) for School Committee of Lexington & another.

*Madelyn N. Morris*, Assistant City Solicitor, for the City of Newton & another.

*Carolyn V. Wood*, Assistant Attorney General, for the Commissioner of Education & another.

---

[1] The town of Lexington.

[2] The Board of Education.

[3] City of Newton & another *vs*. Commissioner of Education & another.

LYNCH, J. On October 7, 1985, the town of Lexington and the school committee of Lexington (Lexington), and the city of Newton and the school committee of Newton (Newton) filed actions seeking declaratory judgments, G. L. c. 231A (1984 ed.), in the Supreme Judicial Court for Suffolk County, that St. 1985, c. 140 (the 1986 fiscal year appropriations act), line item 7035-0004,[4] is ineffective in light of G. L. c. 29, § 27C, the "local mandate" provision of St. 1980, c. 580 (Proposition 2½). After the single justice allowed the parties' joint motion to consolidate the two actions, the defendants, the Commissioner of Education and the Board of Education, answered the complaints. On October 30, 1985, a single justice reserved and reported the consolidated cases to the full bench. We hold that line item 7035-0004 is not made ineffective by G. L. c. 29, § 27C.

Statute 1985, c. 140, line item 7035-0004, appropriated over 55 million dollars for reimbursement of cities and towns for certain expenditures, during fiscal year 1985, for transportation of pupils pursuant to various statutory programs including G. L. c. 76, § 1, as amended by St. 1983, c. 663, § 1 (c. 663). Line item 7035-0004 further provides that, if any city or town "has not accepted" the provisions of c. 663, then it is "ineligible for any reimbursement" of any pupil transportation costs for fiscal year 1986. That line item, which conditions the receipt of reimbursement by cities or towns on their acceptance of c. 663, does not make any appropriation for expenses incurred in fiscal year 1986.

General Laws c. 29, § 27C, as amended by St. 1981, c. 782, § 4, provides in pertinent part: "Notwithstanding any provision of any special or general law to the contrary . . . [a]ny law taking effect on or after January first, nineteen hundred and eighty-one imposing any direct service or cost obligation upon

---

[4] That line item provides in part "that any city, town, regional school district or independent vocational school which has not accepted the provisions of chapter six hundred and sixty-three of the acts of nineteen hundred and eighty-three shall be ineligible for any reimbursement of costs incurred during fiscal year nineteen hundred and eighty-six under this item or for reimbursement of such costs under any of the provisions of general law referred to herein."

any city or town shall [not] be effective in any city or town . . . unless the general court, at the same session in which such law is enacted, provides, by general law and by appropriation, for the assumption by the commonwealth of such cost . . . ." The controversy regarding Proposition 2½ in this case turns on the evolution of G. L. c. 76, § 1.

General Laws c. 76, § 1, was amended in 1950 by St. 1950, c. 400, "to afford private school students the same transportation as public school students." *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 337 (1982) (*Essex*). We interpreted G. L. c. 76, § 1, as amended through St. 1972, c. 766, § 12 (in conjunction with G. L. c. 71, § 68), in *Essex*, to require a particular level of obligation on cities and towns to provide transportation for private school pupils. *Id.* at 338. See *Lexington* v. *Commissioner of Educ.*, 393 Mass. 693, 696 (1985). Because *Essex* obligations on cities and towns existed prior to January 1, 1981, *Essex* obligations are outside the ambit of Proposition 2½. Funding for pupil transportation obligations has traditionally been provided for in a reimbursement scheme, i.e., expenses incurred during one fiscal year are reimbursed in the next fiscal year. See G. L. c. 71, §§ 7A & 7B; G. L. c. 71A, § 8; G. L. c. 71B, § 14; G. L. c. 74, § 8A. Thus, the fact that *Essex* obligations are funded post hoc presents no Proposition 2½ problem. Shortly after our *Essex* decision, the Legislature enacted St. 1983, c. 663, in an attempt to extend the transportation obligations of cities and towns. *Lexington* v. *Commissioner of Educ., supra* at 696. However, we held that c. 663, as a law taking effect after January 1, 1981, was ineffective as an obligation under G. L. c. 29, § 27C, because funding was not provided in the same session for the direct obligation imposed on cities and towns. *Id.* at 698-701. It is clear that line item 7035-0004 is a response to *Lexington* v. *Commissioner of Educ.*

In enacting line item 7035-0004 the Legislature was faced with several options in the wake of *Essex* and *Lexington* v. *Commissioner of Educ.* One option was to provide specifically that c. 663 supersedes Proposition 2½ . Another alternative would have been to abandon the traditional method of funding

for transportation obligations and provide the funds in the same legislative session. Thus, the Legislature could either have repealed or superseded an aspect of Proposition 2½ directly, or created an alternative funding mechanism for c. 663 outside the traditional post hoc reimbursement statutes.

Line item 7035-0004 evidences, on its face, a legislative desire to accomplish the same result by way of another option. Because the Commonwealth has no obligation under Proposition 2½ to reimburse the cities and towns for the expenses of obligations imposed prior to January 1, 1981, it follows that it can impose conditions upon such reimbursement as it does provide. The Legislature chose to use that power as a way to force the cities and towns to accept c. 663.[5] In adopting the carrot and stick approach, the Legislature clearly was responding to our decisions, and intended that c. 663 not be viewed as an "obligation" within the meaning of Proposition 2½.

The stipulated facts demonstrate that the condition imposed makes the acceptance of the now "voluntary" c. 663 a very hard bargain. Lexington estimates that, to comply with c. 663, it would cost approximately $55,000 for the 1985-1986 school year. For Newton, which chose to comply "under duress," the cost for the 1985-1986 school year (beginning November 6, 1985) has been placed at $132,000. In their briefs, Lexington and Newton estimate potential lost reimbursement for choosing not to comply to be in excess of $200,000 for Lexington and over half a million dollars for Newton.

The Legislature has the power to pursue a scheme which creates such hard choices. Proposition 2½ is not a constitutional amendment, and, although its genesis was in initiative and referendum, it enjoys a legal status no different from any other statute. See *Lexington* v. *Commissioner of Educ., supra* at 698. There is, therefore, nothing to prevent the Legislature from forcing the acceptance of c. 663 upon reluctant cities and towns by providing benefits it has no obligation to provide

---

[5] Line item 7035-0004 does not purport to withdraw reimbursement for obligations imposed after January 1, 1981, upon failure to accept c. 663.

only to those cities and towns which accept that statute. The case is remanded to the county court for entry of a judgment consistent with this opinion.

*So ordered.*


ABRAMS, J. (concurring). As the serve and volley of legislative enactments and judicial decisions demonstrates, the Legislature cannot easily or lightly evade the strictures of Proposition 2½. See, e.g., *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209 (1981); *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326 (1982); G. L. c. 76, § 1, as amended through St. 1983, c. 663, § 1; *Lexington* v. *Commissioner of Educ.*, 393 Mass. 693 (1985). Nevertheless, " [e]nactment of appropriation measures [still] provides a crucial means by which the Legislature exercises its lawmaking power to accomplish social purposes." *Opinion of the Justices*, 375 Mass. 827, 832 (1978). The General Court, like Congress,[1] "sometimes legislates by innuendo, making declarations of policy and indicating a preference while requiring measures that, though falling short of legislating its goals, serve as a nudge in the preferred directions." *Rosado* v. *Wyman*, 397 U.S. 397, 413 (1970). Statute 1985, c. 140, is such a case. All the Legislature has done is express a preference for school transportation. No more, no less.

Nothing in Proposition 2½ limits the Legislature's prerogative to achieve its chosen social goals by attaching permissive conditions to appropriations so as to make its choice more attractive than the alternative. " [I]t would require words in the Constitution of unequivocal meaning to prevent the General Court from attaching conditions to the expenditure of moneys appropriated by it." *Mayor of Boston* v. *Treasurer & Receiver Gen.*, 384 Mass. 718, 724 (1981), quoting *Opinion of the*

---

[1] It often is helpful to analogize to Federal law. See *Bloom* v. *Worcester*, 363 Mass. 136, 151-152 (1973). See also *Mayor of Boston* v. *Treasurer & Receiver Gen.*, 384 Mass. 718, 728 (1981) (Hennessey, C.J., dissenting), and cases cited.

*Justices,* 294 Mass. 616, 621-622 (1936). Today's decision does not undercut the basic premise of Proposition 2½, that the Legislature may not *mandate* a new, direct service or cost obligation on cities and towns without complying with its provisions. There is a "distinction between [legislative] 'encouragement' . . . and the imposition of binding obligations on the [cities and towns]." *Pennhurst State School* v. *Halderman,* 451 U.S. 1, 27 (1981). The fact that the condition is burdensome and unfair to Newton and Lexington does not make the exercise of legislative power unlawful.