USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 97-1127 ACKERLEY COMMUNICATIONS OF MASSACHUSETTS, INC., Plaintiff, Appellant, v. CITY OF CAMBRIDGE AND ROBERT BERSANI, ETC., Defendants, Appellees.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________  ____________________ Before Boudin, Circuit Judge, _____________ Godbold* and Cyr, Senior Circuit Judges. _____________________  ____________________ Charles Rothfeld, with whom Andrew L. Frey, Kenneth S. _________________ ________________ __________ Geller, Mayer, Brown & Platt, George A. Berman, Joseph S. Berman, ______ ____________________ ________________ ________________ Posternak, Blankstein & Lund, Eric M. Rubin, Walter E. Diercks _____________________________ ______________ __________________ and Rubin, Winston, Diercks, Harris & Cooke were on brief for _________________________________________ appellant. Peter L. Koff, with whom McGowan, Engel, Tucker, Garrett & _____________ __________________________________ Schultz, P.A., Arthur J. Goldberg and City of Cambridge Law _____________ ___________________ _______________________ Department were on brief for appellees. __________  ____________________ February 5, 1998  ____________________  ____________________ *Of the Eleventh Circuit, sitting by designation. CYR, Senior Circuit Judge. In an earlier opinion we CYR, Senior Circuit Judge.  _____________________ held that the City of Cambridge had violated the First Amendment rights of Ackerley Communications of Massachusetts, Inc., by requiring it to remove various signs which failed to conform with a recently enacted zoning provision aimed at controlling the proliferation of aesthetically offensive signage. Ackerley ________ Communications of Mass., Inc. v. City of Cambridge, 88 F.3d 33 ______________________________ _________________ (1st Cir. 1996) ("Ackerley I"). Ackerley now appeals from the __________ judgment entered following our remand, claiming that the district court erred by refusing to void the offending zoning provision in its entirety. We vacate the district court judgment and remand with directions to enter judgment for Ackerley. I I BACKGROUND BACKGROUND __________ Ackerley owns forty-six large advertising signs or billboards, located throughout Cambridge, which carry "off-site" messages, by which we mean signs whose content relates to no commercial or noncommercial activity occurring at the premises where the sign is located.1 The City amended its ordinance in  ____________________ 1We cannot improve upon an earlier explication of the off- site/on-site distinction:  An onsite sign carries a message that bears some relationship to the activities conducted on the premises where the sign is located. For example, an onsite sign may simply identify a business or agency ("Joe's Hardware" or "YMCA"), or it may advertise a product or service available at that location ("Budweiser Beer" at Parise's Cafe or child care at the Lutheran Church). Depending upon the business or agency, the message on the 2 1991 to require removal of all signs meeting certain objective _______ criteria relating to dimension and location. See Cambridge, ___ Mass., Ordinance 1123, 7.18.1 (June 10, 1991). Under the amended criteria, all forty-six Ackerley signs carrying off-site messages were to be removed, since the ________ ordinance contained no "grandfather" provision. The relevant legal environment is further complicated by the Massachusetts Zoning Enabling Act ("MZEA"), however, which prohibits any municipal zoning ordinance provision purporting to regulate existing on-site signage; that is, any sign carrying a message _______ relating to a commercial or noncommercial activity occurring at the premises where the sign is located. See Mass. Gen. Laws Ann. ___ ch. 40A, 6 (1995).  ____________________ sign may be deemed either commercial or non- commercial. An offsite sign--the category into which most billboards fit--carries a message unrelated to its particular location. These signs also may display either commer- cial or noncommercial messages. For example, an offsite sign may advertise "Great Gifts at Kappy's Liquors," with Kappy's Liquors being located at some distance from the sign, or it may say "No one should be left out in the cold. Write: Citizens Energy Corp." Thus, the onsite/offsite distinction is not a dis- tinction between signs attached to buildings and free standing signs. An offsite sign may be located on a building rooftop, but because the product, good, or service it advertises is not available at the sign's location, it is classified as offsite. For example, if a sign advertising the products available at Joe's Hardware is located atop the Parise Cafe building, Joe's sign is offsite. Ackerley Communications of Mass., Inc. v. City of Somerville, 878 ______________________________________ __________________ F.2d 513, 513 n.1 (1st Cir. 1989) (Coffin, J.). 3 4 The City Council which enacted section 7.18.1 under- stood from the start that its effort to curb visual blight would be thwarted, at least in part, by the MZEA. Be that as it might, the City Council considered off-site signs, such as Ackerley's, the greater aesthetic intrusion, see Ordinance 7.11.1(F), in ___ the sense that on-site signs at least serve a significant practi- cal purpose by assisting consumers to locate a particular busi- ness establishment or product ("Joe's Hardware"), see id.  ___ ___ 7.11.1(G). Accordingly, and since as a general matter the First Amendment does not prefer commercial speech over noncommercial (e.g., political) speech, the Ordinance included a "substitution" ____ provision permitting the owner of a "grandfathered" on-site sign to substitute a noncommercial message for the commercial message previously displayed by its on-site sign (e.g., "Smith for Mayor" ____ replaces "Joe's Hardware"). See id. 7.17. Finally, it includ- ___ ___ ed a "severability" clause saving all "parts" of the Ordinance not specifically held invalid. See id. 7.30. ___ ___ Until the Ordinance was amended, most off-site signs owned by Ackerley carried commercial messages, such as advertise- ments and promotions concerning "for-profit" business ventures. Following its amendment, however, Ackerley's signs have carried only noncommercial messages, such as election advertisements and public service announcements. Ultimately, since the MZEA "grand- father" provision does not cover existing off-site signs, the City directed Ackerley to remove all its signs based on their nonconforming physical characteristics, see Ordinance 7.18.1. ___ 5 Ackerley responded by filing the present action in federal district court, seeking a judicial declaration that the Ordinance on its face and as applied infringed its First Amendment right to free speech. At the same time, Ackerley demanded injunctive relief from the City order directing it to dismantle its signs. On appeal we vacated the provisional district court ruling declaring Ordinance 7.18.1 constitutional. Ackerley I, __________ 88 F.3d at 40. First, we held that the Ordinance and the MZEA, operating in tandem, distinguished between two types of noncom- mercial speech on-site and off-site (i) by permitting nonprofit institutions to display on-site, noncommercial messages on nonconforming signs located on their own premises, and (ii) by allowing on-site sign owners to convert from commercial to noncommercial messages, while denying off-site sign owners either option. We noted that noncommercial speech for example, political discourse is accorded the highest level of First Amendment protection, yet the distinction adopted by the Ordi- nance though predicated on no aesthetic difference in sign appearance (e.g., size) plainly imposed unconstitutional ____ restrictions upon the off-site noncommercial speech of the sign owner, by countenancing only those political messages espoused by the owner or occupant of the site where the sign is located, while excluding other political views, such as those held by non- landowners. Thus, we concluded, even though the City might ban all noncommercial messages from aesthetically intrusive signs, it 6 cannot prefer one particular category of political speaker over another. Id. at 37-38.2 ___ Furthermore, because the Ordinance and the MZEA, in tandem, either allowed or denied "grandfathering" protection based on whether the sign carried an on-site or an off-site message on the date the Ordinance was enacted, we concluded that the City had chilled present speech impermissibly by relying on message content to reward on-site speakers for their past speech, while penalizing off-site speakers for their past speech. Id. ___ at 38-39 (citing Ackerley Communications of Mass., Inc. v. City _______________________________________ ____ of Somerville, 878 F.2d 513, 519 (1st Cir. 1989)).  _____________ In a separate discussion captioned "Remedial Option," we went on to note that the City could not correct these uncon- stitutional effects unilaterally simply by eliminating the "grandfathering" distinction between on-site and off-site signs. See id. at 39-40. Instead, since it was the Commonwealth, ___ ___ through the MZEA, rather than the City through Ordinance  7.18.1, which established the distinction between on-site and off-site signs, we stated that "[r]elief . . . is beyond the scope of this court's power in this case[,]" id. at 39, since ___ amendments to the MZEA "must be left to the workings of the political process." Id. Accordingly, we concluded: ___ The Cambridge ordinance contains a severabil- ity provision stating that, in the event some  ____________________ 2Our reliance on these grounds avoided any need to consider whether the MZEA "grandfathering" distinction between on-site and off-site signs amounted to a "content-based" speech restriction subject to strict-scrutiny review. See id. at 37 & n.7. ___ ___ 7 portion of it is declared invalid, it is the City's intent that the remainder of the ordi- nance continue in full force and effect. We do not in this decision rule unlawful any particular section of the ordinance. Rather, because the constitutional problem stems from the interplay of the ordinance and the state provision, we hold only that Cambridge may not require removal of signs displaying non- commercial messages based on their exclusion from exemption under the state provision. Reversed and Remanded. _____________________ Id. at 40. ___ On remand, Ackerley requested a judicial declaration determining section 7.18.1 invalid in its entirety, which would ________ mean that the City could not order the removal of any off-site sign, whether it carried a noncommercial message, as did Ackerley's, or a commercial message. The City responded that Ackerley I conclusively ruled out any such wholesale rescission __________ of Ordinance 7.18.1. See id. ("We do not in this decision rule ___ ___ unlawful any particular section of the ordinance."). The dis- trict court ultimately granted Ackerley declaratory relief "consistent with the decision [in Ackerley I]" and enjoined the __________ City from requiring Ackerley to remove signs displaying noncom- mercial messages. II II DISCUSSION DISCUSSION __________ A. Law of the Case A. Law of the Case _______________ First, the City contends that the district court was powerless to declare section 7.18.1 invalid in its entirety on remand since Ackerley I expressly stated that we were not ruling __________ "unlawful any particular section of the ordinance." Ackerley I, __________ 8 88 F.3d at 40. In other words, the City proposes to construe the quoted statement from Ackerley I as a binding pronouncement  __________ the "law of the case" that the unconstitutional effects of the MZEA "grandfathering" provision cannot be redressed through the judicial process, and, therefore, that the only relief available to Ackerley in the present litigation would be an order enjoining any application of section 7.18.1 to its noncommercial signs. We begin our analysis with a review of the unusual procedural posture in Ackerley I. The Ackerley complaint sought __________ a judicial declaration that section 7.18.1, on its face and as applied, contravened the First Amendment, as well as the Fifth Amendment "takings" clause. Ackerley requested preliminary injunctive relief only in relation to its First Amendment claim. The district court thereafter denied preliminary injunctive relief, however, based on its determination that Ackerley had shown no "likelihood of success" on its First Amendment claim. As both parties acknowledged that no factfinding would be required to resolve the purely legal issues controlling their First Amendment dispute, at their express request we decided to bypass the provisional likelihood-of-success inquiry normally undertaken in interlocutory appeals from orders denying prelimi- nary injunctive relief, and instead to resolve those issues finally. See Ackerley I, 88 F.3d at 35. Accordingly, and since ___ __________ neither party had sought a final determination as to all other issues which would have had to be decided before final judgment could be entered, nor even briefed the question regarding what 9 remedies might be available to Ackerley once it had been deter- mined that the City had violated the First Amendment, we framed our inquiry narrowly: "The issue we must decide is whether ___ _____ Cambridge may enforce its sign ordinance to require Ackerley to remove its billboards." Id. at 36 n.6 (emphasis added). We ___ responded in the negative. Although we found neither the MZEA nor the Ordinance to be unconstitutional in isolation, we held that their operation in tandem (i) violated the First Amendment by favoring on-site noncommercial speech over off-site noncommercial speech and (ii) penalized off-site speakers based on the content of their past speech. Id. at 37-39. ___ Importantly, our Section II.D discussion in Ackerley I ___________ is captioned "Remedial Option," not "Remedial Options." Id. at ______ _______ ___ 39. Moreover, its context makes clear that the Remedial Option _______________ discussion did not purport to treat with all judicial "remedies" available upon entry of final judgment, but with the more prag- matic and immediate concern as to how the First Amendment infir- mity might be avoided, either unilaterally by the City or by _______ ____________ "construct[ing] a justifiable, content-neutral grandfathering provision" in cooperation with the Commonwealth. Id. at 39-40. ___ Finally, we went on to point out the awkward legal position in which the City Council had been placed, in that though it unques- tionably possessed a legitimate interest in curbing unsightly signage, the Commonwealth of Massachusetts alone had the power to provide a unilateral legislative remedy for the First Amendment ___________ 10 infirmity by eliminating the discrepant "grandfathering" treat- ment accorded on-site and off-site signs. Thus, nothing we said in Section II.D remotely suggested that recourse to the legisla- tive process was the only avenue open to Ackerley.3 ____ We repair once again to Ackerley I, where we prominent- __________ ly noted that the Ordinance contained a severability clause. The very next sentence stated: "We do not in this decision rule unlawful any particular section of the ordinance." Were the quoted sentence to mean, as the City implicitly insists, that no Ordinance provision could be determined invalid on remand, our __ ______ express reference to the severability clause in the immediate- ly preceding sentence would be rendered meaningless. Instead, the contextual focus in the quoted sentence from Ackerley I was upon the word "particular," whose inclusion __________ was a clear acknowledgement that the forthcoming factfinding inquiry on remand could lead the district court to strike one or  ____________________ 3The contrary interpretation proposed by the City presumes that the thrust of our discussion in Section II.D is fairly reflected in the following line of reasoning: The MZEA causes the unconstitutional effects; the court is powerless to strike down the MZEA; therefore, the Ordinance must be immune from judicial invalidation in any part. The City Council must take Commonwealth law as it finds it; the MZEA supersedes 7.18.1; therefore, either the MZEA must be modified through "the workings of the political process," or  7.18.1 must be declared unconstitutional and void, at least in part. Unless at least part of 7.18.1 was rendered invalid by the MZEA, there can have been no legal basis whatever for the dis- trict court order enjoining the City from directing Ackerley to remove its noncommercial signs. Finally, if the district court injunction, implicitly and necessarily, was predicated on a partial invalidation of 7.18.1, then the district court must necessarily have resolved the closely related severability question as well. 11 more portions of the Ordinance, but not all. As severability disputes usually turn on fact-intensive inquiries best left to the trial court in the first instance, see infra Section II.B,4 ___ _____ and no factfinding had occurred at the preliminary injunction stage in Ackerley I, we accordingly reemphasized the limited ___________ nature of our holding: "we hold only that Cambridge may not ____ ___ require removal of signs displaying noncommercial messages based on their exclusion from exemption under the state provision." (Emphasis added.) Thus, Ackerley I made no pronouncement on the ___________ law of the case with respect to the severability issue.5 ____________ B. Severability B. Severability ____________ As the MZEA grandfathering provision was not amended in  ____________________ 4See, e.g., Metromedia, Inc. v. City of San Diego, 453 U.S. ___ ____ ________________ _________________ 490, 521 (1981) (holding that zoning ordinance violated First Amendment, but remanding to lower court to determine if it might "sustain the ordinance by limiting its reach to commercial speech, assuming the ordinance is susceptible to this treat- ment"), on remand, 649 P.2d 908 (Cal. 1982) (holding that uncon- __ ______ stitutional provision could not be severed); see also, e.g., ___ ____ ____ United States Dep't of the Treasury v. Fabe, 508 U.S. 491, 509-10 ___________________________________ ____ (1993) (remanding for severability determination); Planned _______ Parenthood of S.E. Pa. v. Casey, 505 U.S. 833, 901 (1992) (same); ______________________ _____ FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230 (1990) (same); ____________ ______________ City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 772 _________________ ______________________ (1988) (same). 5Lastly, the City contends that Ackerley itself understood Ackerley I as a final pronouncement on remedy since it requested __________ attorney fees on remand. Its contention is beside the point. Whether or not Ackerley prevailed on the severability question, it had already achieved "prevailing party" status following Ackerley I by vindicating its constitutional claim and gaining at __________ least the right to extraordinary equitable relief (i.e., an ____ injunction against the removal of its signs). See Hensley v. ___ _______ Eckerhart, 461 U.S. 424, 433 (1983) (defining "prevailing party" _________ as one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit").  12 response to Ackerley I, the constitutional infirmity persists. __________ Therefore, permanent injunctive relief may not be granted Ackerley without first determining whether any, and if so which, portion(s) of the Ordinance may be unlawful. See, e.g., National ___ ____ ________ Adver. Co. v. Town of Babylon, 900 F.2d 551, 554 (2d Cir. 1990) __________ _______________ (de facto effect of such a targeted injunction is "to sever the __ _____ unconstitutional portions of the ordinances and to leave the remainder intact"). Since the district court did not address the severability issue on remand, the case must be returned for further proceedings, including any essential factfinding, unless we can make the severability determination now, with confidence, as a matter of law. The severability vel non of a state statute or munici- ___ ___ pal ordinance is controlled by state law. See Leavitt v. Jane ___ _______ ____ L., 116 S. Ct. 2068, 2069 (1997); Exxon Corp. v. Hunt, 475 U.S. __ ___________ ____ 355, 376 (1986). "'Where a statutory provision is unconstitu- tional, if it is in its nature separable from the other parts of the statute, so that they may well stand independently of it, and if there is no such connection between the valid and the invalid parts that the [legislative body] would not be expected to enact the valid part without the other, the statute will be held good, except in that part which is in conflict with the Constitution.'" Mayor of Boston v. Treasurer & Receiver Gen., 429 N.E.2d 691, 695 _______________ _________________________ (Mass. 1981) (citation omitted). On the other hand, "[i]f the court is unable to know whether the Legislature would have enacted a particular bill without the unconstitutional provision, 13 it will not sever the unconstitutional provision, but will strike the entire statute." Id.6  ___ At the very least, Ackerley is entitled to a judicial declaration invalidating section 7.18.1 to the extent it would require removal of nonconforming off-site signs carrying noncom- _______ mercial messages. The severability issue thus devolves into an _______ impressionistic inquiry into whether section 7.18.1 would have been enacted had the City Council known that it would require only the removal of nonconforming off-site signs carrying commer- _______ cial messages. As we cannot divine with confidence what the City ____ Council would have done, Mayor of Boston, 429 N.E.2d at 695, the _______________ case must be remanded to the district court with directions to enter a final judgment invalidating section 7.18.1 in its entire- ty. We explain. Severability clauses, though probative of legislative intent, are not conclusive. See, e.g., Reno v. ACLU, 117 S. Ct. ___ ____ ____ ____ 2329, 2351 n.49 (1997) ("[A] severability clause is 'an aid merely; not an inexorable command.'") (citation omitted). Although Ordinance 7.30, see supra p. 4, only applies to ___ _____ invalidated "parts" of the Ordinance, that term begs the question in the present context. Section 7.18.1 was neither drafted nor enacted in separate "parts" which discretely banned commercial and noncommercial off-site signs, either of which might be  ____________________ 6Neither party contests the threshold severability determi- nation that Ordinance 7.18.1, which applies exclusively to existing signs, is readily severable from the remaining "parts" ________ of the Ordinance prospectively regulating the aesthetic features of future signs. 14 stricken independently of the other. Neither section 7.18.1, nor any other "part" of the Ordinance, alludes in any way to a substantive distinction between commercial and noncommercial messages.7 Nor can such a substantive distinction be read into section 7.18.1, without in effect gratuitously supplementing its language with the phrase "except for off-site signs bearing noncommercial messages." Therefore, as we cannot say with confidence that the City Council envisioned section 7.18.1 as anything but a unitary "part" of the Ordinance, the severability clause avails the City nothing. Furthermore, although at first blush it may appear that settled principles of federalism and separation of powers would counsel that the explicit severability presumption contained in Ordinance 7.30 be given literal sway, there is more here than meets the eye. The severability principles controlling the present decision were intended principally to ensure that the courts, state and federal, not dissuade or preempt legislative bodies from debating and determining the appropriate public policy in the first instance, within constitutional limits. See, ___ e.g., Reno, 117 S. Ct. at 2351 n.49 ("'It would certainly be ____ ____ dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could rightfully be detained and who should be  ____________________ 7Although Ordinance 7.17 allows on-site sign owners to replace their commercial messages with noncommercial messages, this provision is merely permissive, and imposes no policing ________ burden on the City whatsoever, since on-site signs were allowed without regard to their message content. 15 set at large. This would, to some extent, substitute the judi- cial for the legislative department of the government.'") (cita- tion omitted). Thus, proper respect for the principles of federalism and separation of powers counsels against construing section 7.30 as a "cure all" for the severability ills in the present Ordinance.  The City further contends that the Council enacted the Ordinance to eliminate nonconforming signs to the maximum extent allowed by law, and that severance would prevent Ackerley and other sign owners from converting their off-site sign messages to more lucrative commercial messages, thereby providing a strong financial disincentive to maintaining such signs in the future.8 Be that as it might, however, the suggested distinction also would entail significant administrative burdens and expense for the City, which would be required to police nonconforming off- site signs to determine whether they carried only the permitted "noncommercial" messages, articulate objective criteria for making the often blurry distinction between "commercial" and "noncommercial" speech, and provide sign owners with a forum in which to address their challenges to, and appeals from, any adverse City determination that a particular message was "commer- cial." See Metromedia, Inc. v. City of San Diego, 649 P.2d 903, ___ ________________ _________________ 908 (Cal. 1982) (rejecting "severability" claim on same ground).  ____________________ 8Since no factfinding occurred on remand, however, the intu- itive premise advanced by the City finds no record support. For example, the record is devoid of evidence that noncommercial messages necessarily command less revenue. 16 Moreover, nothing in the Ordinance indicates that the Council ever considered that the City would need to police, hear, or determine the commercial-noncommercial distinction in order to implement its chosen aesthetic objectives. Nor has the City pointed to any probative evidence of such legislative consider- ation which might be material on remand. Thus, although the blurriness of the commercial-noncommercial distinction itself may not render the amended ordinance unconstitutional, courts con- fronted with severability questions clouded by serious uncertain- ties regarding whether the appropriate legislative body ever considered the effect of a severability provision in the relevant context, ought not be anxious to arrogate the legislative prerog- ative inherent in determining the preferred or more efficient means of pursuing the particular goals chosen by the responsible legislative body.9  The City Council may decide to adopt less onerous initiatives than the presumably burdensome and expensive adminis-  ____________________ 9In a similar vein, the City contends that Ackerley waived any entitlement to wholesale invalidation of 7.18.1 by conced- ing, during the Ackerley I appeal, that the City would have had __________ the authority to ban off-site commercial signs while allowing on- site commercial signs. See Ackerley I, 88 F.3d at 37 n.8 (citing ___ __________ Metromedia, 453 U.S. at 512). Far from noting any such "conces- __________ sion" by Ackerley, however, we simply observed that Ackerley "did not contest" the point. Id. Because the City had enacted no ___ such ordinance i.e., one simply banning off-site commercial ____ signs while allowing on-site commercial signs but had chosen to ban off-site noncommercial signs as well, Metromedia was __________ wholly inapposite in Ackerley's first appeal. Moreover, for purposes of the present appeal, the threshold issue no longer is whether the City has the authority to enact an ordinance banning off-site commercial signs while allowing on-site commercial signs, but whether it envisioned reverting to such a regime should its ban on off-site noncommercial signs be struck down. 17 trative procedures which would be required were we not to invali- date section 7.18.1 in toto. For example, it might determine __ ____ that the municipality's interests would be better served by attempting to persuade the state legislature to approve a con- tent-neutral grandfathering provision based exclusively on the physical characteristics of existing signs, rather than their content. See Ackerley I, 88 F.3d at 39-40. Thus, we think such ___ __________ important policy decisions are for the Council in the first instance. III III CONCLUSION CONCLUSION __________ As the City points to no factual circumstance which, if demonstrated on remand, would affect our severability determina- tion, we can discern no substantial benefit from a further remand. Accordingly, the case is remanded to the district court for entry of final judgment declaring section 7.18.1 invalid in __ toto, and enjoining the City from requiring Ackerley to remove ____ signs pursuant to section 7.18.1 as presently written.10 So So __ ordered. ordered. _______  ____________________ 10The City further requests that we reconsider our holding, in Ackerley I, that application of the Ordinance to Ackerley __________ would be unconstitutional. Such relief is beyond our preroga- tives. See Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st ___ ________ __________________ Cir. 1995) (noting generally that First Circuit panels are bound by prior panel decisions directly on point). 18