**ACKERLEY COMMUNICATIONS OF MASSACHUSETTS, INC., Plaintiff, Appellant,**

v.

**CITY OF CAMBRIDGE and Robert Bersani, etc., Defendants, Appellees.**

No. 97–1127.

United States Court of Appeals, First Circuit.

Heard Oct. 8, 1997.

Decided Feb. 5, 1998.

Charles Rothfeld, with whom Andrew L. Frey, Kenneth S. Geller, Mayer, Brown & Platt, Washington, DC, George A. Berman, Joseph S. Berman, Posternak, Blankstein & Lund, Boston, MA, Eric M. Rubin, Walter E. Diercks and Rubin, Winston, Diercks, Harris & Cooke, Washington, DC, were on brief, for appellant.

Peter L. Koff, with whom McGowan, Engel, Tucker, Garrett & Schultz, P.A., Boston, MA, Arthur J. Goldberg, Middletown, RI, and City of Cambridge Law Department were on brief, for appellees.

Before BOUDIN, Circuit Judge, GODBOLD * and CYR, Senior Circuit Judges.

CYR, Senior Circuit Judge.

In an earlier opinion we held that the City of Cambridge had violated the First Amendment rights of Ackerley Communications of Massachusetts, Inc., by requiring it to remove various signs which failed to conform with a recently enacted zoning provision aimed at controlling the proliferation of aesthetically offensive signage. *Ackerley Communications of Mass., Inc. v. City of Cambridge*, 88 F.3d 33 (1st Cir.1996) ("*Ackerley I*"). Ackerley now appeals from the judgment entered following our remand, claiming that the district court erred by refusing to void the offending zoning provision in its entirety. We vacate the district court judgment and remand with directions to enter judgment for Ackerley.

# I

## BACKGROUND

Ackerley owns forty-six large advertising signs or billboards, located throughout Cambridge, which carry "off-site" messages, by which we mean signs whose content relates to no commercial or noncommercial activity occurring at the premises where the sign is located.[1] The City amended its ordinance in

---

* Of the Eleventh Circuit, sitting by designation.

1. We cannot improve upon an earlier explication of the off-site/on-site distinction:

   An on-site sign carries a message that bears some relationship to the activities conducted on the premises where the sign is located. For example, an on-site sign may simply identify a business or agency ("Joe's Hardware" or "YMCA"), or it may advertise a product or service available at that location ("Budweiser Beer" at Parise's Cafe or child care at the Lutheran Church). Depending upon the business or agency, the message on the sign may be deemed either commercial or noncommercial. An off-site sign—the category into which most billboards fit—carries a message unrelated to its particular location. These signs also may display either commercial or noncommercial messages. For example, an off-site sign may advertise "Great Gifts at Kappy's Liquors," with Kappy's Liquors being located at some distance from the sign, or it may say "No one should be left out in the cold. Write: Citizens Energy Corp." Thus, the on-site/off-site distinction is not a distinction between signs attached to buildings and free standing signs. An off-site sign may be located on a building rooftop, but because the product, good, or service it advertises is not available at the sign's location, it is classified as off-site. For example, if a sign advertising the products available at Joe's Hardware is located atop the Parise Cafe building, Joe's sign is off-site.

   *Ackerley Communications of Mass., Inc. v. City of Somerville*, 878 F.2d 513, 513 n. 1 (1st Cir.1989) (Coffin, J.).

1991 to require *removal* of all signs meeting certain objective criteria relating to dimension and location. *See* Cambridge, Mass., Ordinance 1123, § 7.18.1 (June 10, 1991).

Under the amended criteria, all forty-six Ackerley signs carrying *off-site* messages were to be removed, since the ordinance contained no "grandfather" provision. The relevant legal environment is further complicated by the Massachusetts Zoning Enabling Act ("MZEA"), however, which prohibits any municipal zoning ordinance provision purporting to regulate existing *on-site* signage; that is, any sign carrying a message relating to a commercial or noncommercial activity occurring at the premises where the sign is located. *See* Mass. Gen. Laws Ann. ch. 40A, § 6 (1995).

The City Council which enacted section 7.18.1 understood from the start that its effort to curb visual blight would be thwarted, at least in part, by the MZEA. Be that as it might, the City Council considered off-site signs, such as Ackerley's, the greater aesthetic intrusion, *see* Ordinance § 7.11.1(F), in the sense that on-site signs at least serve a significant practical purpose by assisting consumers to locate a particular business establishment or product ("Joe's Hardware"), *see id.* § 7.11.1(G). Accordingly, and since as a general matter the First Amendment does not prefer commercial speech over noncommercial (*e.g.,* political) speech, the Ordinance included a "substitution" provision permitting the owner of a "grandfathered" on-site sign to substitute a noncommercial message for the commercial message previously displayed by its on-site sign (*e.g.,* "Smith for Mayor" replaces "Joe's Hardware"). *See id.* § 7.17. Finally, it included a "severability" clause saving all "parts" of the Ordinance not specifically held invalid. *See id.* § 7.30.

Until the Ordinance was amended, most off-site signs owned by Ackerley carried commercial messages, such as advertisements and promotions concerning "for-profit" business ventures. Following its amendment, however, Ackerley's signs have carried only noncommercial messages, such as elec-

tion advertisements and public service announcements. Ultimately, since the MZEA "grandfather" provision does not cover existing off-site signs, the City directed Ackerley to remove all its signs based on their nonconforming physical characteristics, *see* Ordinance § 7.18.1.

Ackerley responded by filing the present action in federal district court, seeking a judicial declaration that the Ordinance—on its face and as applied—infringed its First Amendment right to free speech. At the same time, Ackerley demanded injunctive relief from the City order directing it to dismantle its signs.

On appeal we vacated the provisional district court ruling declaring Ordinance § 7.18.1 constitutional. *Ackerley I,* 88 F.3d at 40. First, we held that the Ordinance and the MZEA, operating in tandem, distinguished between two types of noncommercial speech—on-site and off-site—(i) by permitting nonprofit institutions to display on-site, noncommercial messages on nonconforming signs located on their own premises, and (ii) by allowing on-site sign owners to convert from commercial to noncommercial messages, while denying off-site sign owners either option. We noted that noncommercial speech—for example, political discourse—is accorded the highest level of First Amendment protection, yet the distinction adopted by the Ordinance—though predicated on no aesthetic difference in sign appearance (*e.g.,* size)—plainly imposed unconstitutional restrictions upon the off-site noncommercial speech of the sign owner, by countenancing only those political messages espoused by the owner or occupant of the site where the sign is located, while excluding other political views, such as those held by non-landowners. Thus, we concluded, even though the City might ban all noncommercial messages from aesthetically intrusive signs, it cannot prefer one particular category of political speaker over another. *Id.* at 37–38.[2]

Furthermore, because the Ordinance and the MZEA, in tandem, either allowed or denied "grandfathering" protection based on

---

**2.** Our reliance on these grounds avoided any need to consider whether the MZEA "grandfathering" distinction between on-site and off-site signs amounted to a "content-based" speech restriction subject to strict-scrutiny review. *See id.* at 37 & n. 7.

whether the sign carried an on-site or an off-site message on the date the Ordinance was enacted, we concluded that the City had chilled present speech impermissibly by relying on message content to reward on-site speakers for their past speech, while penalizing off-site speakers for their past speech. *Id.* at 38–39 (citing *Ackerley Communications of Mass., Inc. v. City of Somerville,* 878 F.2d 513, 519 (1st Cir.1989)).

In a separate discussion captioned "Remedial Option," we went on to note that the City could not correct these unconstitutional effects unilaterally simply by eliminating the "grandfathering" distinction between on-site and off-site signs. *See id.* at 39–40. Instead, since it was the Commonwealth, through the MZEA, rather than the City through Ordinance § 7.18.1, which established the distinction between on-site and off-site signs, we stated that "[r]elief ... is beyond the scope of this court's power in this case[,]" *id.* at 39, since amendments to the MZEA "must be left to the workings of the political process." *Id.* Accordingly, we concluded:

> The Cambridge ordinance contains a severability provision stating that, in the event some portion of it is declared invalid, it is the City's intent that the remainder of the ordinance continue in full force and effect. We do not in this decision rule unlawful any particular section of the ordinance. Rather, because the constitutional problem stems from the interplay of the ordinance and the state provision, we hold only that Cambridge may not require removal of signs displaying noncommercial messages based on their exclusion from exemption under the state provision. *Reversed and Remanded.*

*Id.* at 40.

On remand, Ackerley requested a judicial declaration determining section 7.18.1 invalid in its *entirety,* which would mean that the City could not order the removal of any off-site sign, whether it carried a noncommercial message, as did Ackerley's, or a commercial message. The City responded that *Ackerley I* conclusively ruled out any such wholesale rescission of Ordinance § 7.18.1. *See id.* ("We do not in this decision rule unlawful any particular section of the ordinance."). The

district court ultimately granted Ackerley declaratory relief "consistent with the decision [in *Ackerley I* ]" and enjoined the City from requiring Ackerley to remove signs displaying noncommercial messages.

## II

### *DISCUSSION*

#### A. *Law of the Case*

■ First, the City contends that the district court was powerless to declare section 7.18.1 invalid in its entirety on remand since *Ackerley I* expressly stated that we were not ruling "unlawful any particular section of the ordinance." *Ackerley I,* 88 F.3d at 40. In other words, the City proposes to construe the quoted statement from *Ackerley I* as a binding pronouncement—the "law of the case"—that the unconstitutional effects of the MZEA "grandfathering" provision cannot be redressed through the judicial process, and, therefore, that the only relief available to Ackerley in the present litigation would be an order enjoining any application of section 7.18.1 to its noncommercial signs.

We begin our analysis with a review of the unusual procedural posture in *Ackerley I.* The Ackerley complaint sought a judicial declaration that section 7.18.1, on its face and as applied, contravened the First Amendment, as well as the Fifth Amendment "takings" clause. Ackerley requested preliminary injunctive relief only in relation to its First Amendment claim. The district court thereafter denied preliminary injunctive relief, however, based on its determination that Ackerley had shown no "likelihood of success" on its First Amendment claim.

As both parties acknowledged that no fact-finding would be required to resolve the purely legal issues controlling their First Amendment dispute, at their express request we decided to bypass the provisional likelihood-of-success inquiry normally undertaken in interlocutory appeals from orders denying preliminary injunctive relief, and instead to resolve those issues finally. *See Ackerley I,* 88 F.3d at 35. Accordingly, and since neither party had sought a final determination as to all other issues which would have had to be decided before final judgment could be

entered, nor even briefed the question regarding what remedies might be available to Ackerley once it had been determined that the City had violated the First Amendment, we framed our inquiry narrowly: *"The issue we must decide is whether Cambridge may enforce its sign ordinance to require Ackerley to remove its billboards." Id.* at 36 n. 6 (emphasis added). We responded in the negative.

Although we found neither the MZEA nor the Ordinance to be unconstitutional in isolation, we held that their operation in tandem (i) violated the First Amendment by favoring on-site noncommercial speech over off-site noncommercial speech and (ii) penalized off-site speakers based on the content of their past speech. *Id.* at 37–39.

Importantly, our Section II.D discussion in *Ackerley I* is captioned "Remedial *Option,*" not "Remedial *Options." Id.* at 39. Moreover, its context makes clear that the *Remedial Option* discussion did not purport to treat with all judicial "remedies" available upon entry of final judgment, but with the more pragmatic and immediate concern as to how the First Amendment infirmity might be *avoided,* either *unilaterally* by the City or by "construct[ing] a justifiable, content-neutral grandfathering provision" in cooperation with the Commonwealth. *Id.* at 39–40. Finally, we went on to point out the awkward legal position in which the City Council had been

placed, in that though it unquestionably possessed a legitimate interest in curbing unsightly signage, the Commonwealth of Massachusetts alone had the power to provide a unilateral *legislative* remedy for the First Amendment infirmity by eliminating the discrepant "grandfathering" treatment accorded on-site and off-site signs. Thus, nothing we said in Section II.D remotely suggested that recourse to the legislative process was the *only* avenue open to Ackerley.[3]

We repair once again to *Ackerley I,* where we prominently noted that the Ordinance contained a severability clause. The very next sentence stated: "We do not in this decision rule unlawful any particular section of the ordinance." Were the quoted sentence to mean, as the City implicitly insists, that no Ordinance provision could be determined invalid *on remand,* our express reference to the severability clause—in the immediately preceding sentence—would be rendered meaningless.

Instead, the contextual focus in the quoted sentence from *Ackerley I* was upon the word "particular," whose inclusion was a clear acknowledgement that the forthcoming fact-finding inquiry on remand could lead the district court to strike one or more portions of the Ordinance, but not all. As severability disputes usually turn on fact-intensive inquiries best left to the trial court in the first instance, *see infra* Section II.B,[4] and no fact-

---

3. The contrary interpretation proposed by the City presumes that the thrust of our discussion in Section II.D is fairly reflected in the following line of reasoning: The MZEA causes the unconstitutional effects; the court is powerless to strike down the MZEA; therefore, the Ordinance must be immune from judicial invalidation in any part.

The City Council must take Commonwealth law as it finds it; the MZEA supersedes § 7.18.1; therefore, either the MZEA must be modified through "the workings of the political process," or § 7.18.1 must be declared unconstitutional and void, at least in part.

Unless at least part of § 7.18.1 was rendered invalid by the MZEA, there can have been no legal basis whatever for the district court order enjoining the City from directing Ackerley to remove its noncommercial signs. Finally, if the district court injunction, implicitly and necessarily, was predicated on a partial invalidation of § 7.18.1, then the district court must necessarily have resolved the closely related severability question as well.

4. *See, e.g., Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 521, 101 S.Ct. 2882, 2899, 69 L.Ed.2d 800 (1981) (holding that zoning ordinance violated First Amendment, but remanding to lower court to determine if it might "sustain the ordinance by limiting its reach to commercial speech, assuming the ordinance is susceptible to this treatment"), *on remand,* 32 Cal.3d 180, 185 Cal.Rptr. 260, 649 P.2d 902 (1982) (holding that unconstitutional provision could not be severed); *see also, e.g., United States Dept. of the Treasury v. Fabe,* 508 U.S. 491, 509–10, 113 S.Ct. 2202, 2212–13, 124 L.Ed.2d 449 (1993) (remanding for severability determination); *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 901, 112 S.Ct. 2791, 2832–33, 120 L.Ed.2d 674 (1992) (same); *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 230, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990) (same); *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 772, 108 S.Ct. 2138, 2152, 100 L.Ed.2d 771 (1988) (same).

finding had occurred at the preliminary injunction stage in *Ackerley I*, we accordingly reemphasized the limited nature of our holding: "we hold *only* that Cambridge may *not* require removal of signs displaying noncommercial messages based on their exclusion from exemption under the state provision." (Emphasis added.) Thus, *Ackerley I* made no pronouncement on the law of the case with respect to the *severability* issue.[5]

### B. *Severability*

■ As the MZEA grandfathering provision was not amended in response to *Ackerley I*, the constitutional infirmity persists. Therefore, permanent injunctive relief may not be granted Ackerley without first determining whether any, and if so which, portion(s) of the Ordinance may be unlawful. *See, e.g., National Advertising Co. v. Town of Babylon*, 900 F.2d 551, 554 (2d Cir.1990) (*de facto* effect of such a targeted injunction is "to sever the unconstitutional portions of the ordinances and to leave the remainder intact"). Since the district court did not address the severability issue on remand, the case must be returned for further proceedings, including any essential factfinding, unless we can make the severability determination now, with confidence, as a matter of law.

■ The severability *vel non* of a state statute or municipal ordinance is controlled by state law. *See Leavitt v. Jane L.*, 518 U.S. 137, 116 S.Ct. 2068, 2069, 135 L.Ed.2d 443 (1996); *Exxon Corp. v. Hunt*, 475 U.S. 355, 376, 106 S.Ct. 1103, 1116, 89 L.Ed.2d 364 (1986). " 'Where a statutory provision is unconstitutional, if it is in its nature separable from the other parts of the statute, so that they may well stand independently of it, and if there is no such connection between the valid and the invalid parts that the [legisla-

tive body] would not be expected to enact the valid part without the other, the statute will be held good, except in that part which is in conflict with the Constitution.' " *Mayor of Boston v. Treasurer & Receiver Gen.*, 384 Mass. 718, 429 N.E.2d 691, 695 (1981) (citation omitted). On the other hand, "[i]f the court is unable to know whether the Legislature would have enacted a particular bill without the unconstitutional provision, it will not sever the unconstitutional provision, but will strike the entire statute." *Id.*[6]

At the very least, Ackerley is entitled to a judicial declaration invalidating section 7.18.1 to the extent it would require removal of nonconforming off-site signs carrying *noncommercial* messages. The severability issue thus devolves into an impressionistic inquiry into whether section 7.18.1 would have been enacted had the City Council known that it would require only the removal of nonconforming off-site signs carrying *commercial* messages. As we cannot divine with confidence what the City Council would have done, *Mayor of Boston*, 429 N.E.2d at 695, the case must be remanded to the district court with directions to enter a final judgment invalidating section 7.18.1 in its entirety. We explain.

■ Severability clauses, though probative of legislative intent, are not conclusive. *See, e.g., Reno v. ACLU*, — U.S. —, — n. 49, 117 S.Ct. 2329, 2351 n. 49, 138 L.Ed.2d 874 (1997) ("[A] severability clause is 'an aid merely; not an inexorable command.' ") (citation omitted). Although Ordinance § 7.30, *see supra* p. —, only applies to invalidated "parts" of the Ordinance, that term begs the question in the present context. Section 7.18.1 was neither drafted nor enacted in separate "parts" which discretely banned

---

5. Lastly, the City contends that Ackerley itself understood *Ackerley I* as a final pronouncement on remedy since it requested attorney fees on remand. Its contention is beside the point. Whether or not Ackerley prevailed on the severability question, it had already achieved "prevailing party" status following *Ackerley I* by vindicating its constitutional claim and gaining at least the right to extraordinary equitable relief (*i.e.*, an injunction against the removal of its signs). *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (defining

"prevailing party" as one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit").

6. Neither party contests the threshold severability determination that Ordinance § 7.18.1, which applies exclusively to *existing* signs, is readily severable from the remaining "parts" of the Ordinance prospectively regulating the aesthetic features of future signs.

commercial and noncommercial off-site signs, either of which might be stricken. independently of the other. Neither section 7.18.1, nor any other "part" of the Ordinance, alludes in any way to a substantive distinction between commercial and noncommercial messages.[7] Nor can such a substantive distinction be read into section 7.18.1, without in effect gratuitously supplementing its language with the phrase "except for off-site signs bearing noncommercial messages." Therefore, as we cannot say with confidence that the City Council envisioned section 7.18.1 as anything but a unitary "part" of the Ordinance, the severability clause avails the City nothing.

Furthermore, although at first blush it may appear that settled principles of federalism and separation of powers would counsel that the explicit severability presumption contained in Ordinance § 7.30 be given literal sway, there is more here than meets the eye. The severability principles controlling the present decision were intended principally to ensure that the courts, state and federal, not dissuade or preempt legislative bodies from debating and determining the appropriate public policy in the first instance, within constitutional limits. *See, e.g., Reno,* at —— n. 49, 117 S.Ct. at 2351 n. 49 (" 'It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could rightfully be detained and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government.' ") (citation omitted). Thus, proper respect for the principles of federalism and separation of powers counsels against construing section 7.30 as a "cure all" for the severability ills in the present Ordinance.

The City further contends that the Council enacted the Ordinance to eliminate nonconforming signs to the maximum extent al-

lowed by law, and that severance would prevent Ackerley and other sign owners from converting their off-site sign messages to more lucrative commercial messages, thereby providing a strong financial disincentive to maintaining such signs in the future.[8] Be that as it might, however, the suggested distinction also would entail significant administrative burdens and expense for the City, which would be required to police nonconforming off-site signs to determine whether they carried only the permitted "noncommercial" messages, articulate objective criteria for making the often blurry distinction between "commercial" and "noncommercial" speech, and provide sign owners with a forum in which to address their challenges to, and appeals from, any adverse City determination that a particular message was "commercial." *See Metromedia, Inc. v. City of San Diego,* 32 Cal.3d 180, 185 Cal.Rptr. 260, 649 P.2d 902, 908 (1982) (rejecting "severability" claim on same ground).

■ Moreover, nothing in the Ordinance indicates that the Council ever considered that the City would need to police, hear, or determine the commercial-noncommercial distinction in order to implement its chosen aesthetic objectives. Nor has the City pointed to any probative evidence of such legislative consideration which might be material on remand. Thus, although the blurriness of the commercial-noncommercial distinction itself may not render the amended ordinance unconstitutional, courts confronted with severability questions clouded by serious uncertainties regarding whether the appropriate legislative body ever considered the effect of a severability provision in the relevant context, ought not be anxious to arrogate the legislative prerogative inherent in determining the preferred or more efficient means of pursuing the particular goals chosen by the responsible legislative body.[9]

---

7. Although Ordinance § 7.17 allows on-site sign owners to replace their commercial messages with noncommercial messages, this provision is merely permissive, and imposes no *policing* burden on the City whatsoever, since on-site signs were allowed without regard to their message content.

8. Since no factfinding occurred on remand, however, the intuitive premise advanced by the City finds no record support. For example, the record is devoid of evidence that noncommercial messages necessarily command less revenue.

9. In a similar vein, the City contends that Ackerley waived any entitlement to wholesale invalidation of § 7.18.1 by conceding, during the *Acker-*

The City Council may decide to adopt less onerous initiatives than the presumably burdensome and expensive administrative procedures which would be required were we not to invalidate section 7.18.1 *in toto.* For example, it might determine that the municipality's interests would be better served by attempting to persuade the state legislature to approve a content-neutral grandfathering provision based exclusively on the physical characteristics of existing signs, rather than their content. *See Ackerley I,* 88 F.3d at 39–40. Thus, we think such important policy decisions are for the Council in the first instance.

### III

### *CONCLUSION*

As the City points to no factual circumstance which, if demonstrated on remand, would affect our severability determination, we can discern no substantial benefit from a further remand. Accordingly, the case is remanded to the district court for entry of final judgment declaring section 7.18.1 invalid *in toto,* and enjoining the City from requiring Ackerley to remove signs pursuant to section 7.18.1 as presently written.[10] *So ordered.*

*ley I* appeal, that the City would have had the authority to ban off-site commercial signs while allowing on-site commercial signs. *See Ackerley I,* 88 F.3d at 37 n. 8 (citing *Metromedia,* 453 U.S. at 512, 101 S.Ct. at 2894–95). Far from noting any such "concession" by Ackerley, however, we simply observed that Ackerley "did not contest" the point. *Id.* Because the City had enacted no such ordinance—*i.e.,* one simply banning off-site commercial signs while allowing on-site commercial signs—but had chosen to ban off-site noncommercial signs as well, *Metromedia* was wholly inapposite in Ackerley's first appeal. Moreover, for purposes of the present appeal, the threshold issue no longer is whether the City has the authority to enact an ordinance banning off-site commercial signs while allowing on-site commercial signs, but whether it envisioned reverting to such a regime should its ban on off-site noncommercial signs be struck down.

10. The City further requests that we reconsider our holding, in *Ackerley I,* that application of the Ordinance to Ackerley would be unconstitutional. Such relief is beyond our prerogatives. *See Williams v. Ashland Eng'g Co.,* 45 F.3d 588, 592 (1st Cir.1995) (noting generally that First Circuit panels are bound by prior panel decisions directly on point).