CANTERBURY LIQUORS
& PANTRY, Plaintiff,

and

Whitehall Co., Ltd., Plaintiff/Intervenor,

v.

Walter J. SULLIVAN, Jr.,
et al., Defendants,

and

Massachusetts Wholesalers of Malt Beverages, Inc., Defendant/Intervenor.

Civil Action No. 94–11701–MLW.

United States District Court,
D. Massachusetts.

March 18, 1998.

Robert M. Buchanan, Jr., Robert S. Frank, Jr., Joshua Engel, Choate, Hall & Stewart, Boston, MA, for Whitehall Co., Ltd., movant.

## MEMORANDUM AND ORDER

WOLF, District Judge.

### I. Procedural History

The present plaintiffs in this case are Seashore Corporation, a licensed retailer of alcoholic beverages which does business as Canterbury Liquors and Pantry, and Whitehall Company, Ltd., a licensed wholesaler of alcoholic beverages. The original defendants were the Chairman and Commissioners of the Massachusetts Alcoholic Beverages Control Commission, who have been sued in their official capacities (the "ABCC" or the "State Defendants"). The Massachusetts Wholesalers of Malt Beverages, Inc. ("MWMBI"), a trade association whose members are engaged primarily in the wholesale sale of beer, subsequently intervened as a defendant.

Plaintiffs have sought a declaratory judgment that the portion of M.G.L. c. 138, § 25A, requiring that wholesale prices for liquor be established and maintained for 30 days, and the ABCC's regulations implementing the challenged statutory provisions, 204 C.M.R. §§ 6.00–6.07, violate § 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs also originally requested injunctive relief.

As described in detail in the February 3, 1998 Memorandum and Order, plaintiffs have not challenged § M.G.L. c. 138, § 25A to the extent that it generally prohibits wholesale price discrimination. Rather, plaintiffs have focused their claims on the portion of the statute and related regulations that: require wholesalers of alcoholic beverages to post their prices by the fifth day of a month and file a schedule of such prices with the ABCC; permit amendments by the fifteenth day of a month only to meet a specific lower price filed by a competitor; and require that such posted prices remain in effect throughout the next calendar month. See M.G.L. c. 138, § 25A, lines 8–13, and 204 C.M.R. § 6.03(3).

The parties filed cross-motions for summary judgment on plaintiffs' claim that the challenged provisions of the statute and regulations constitute a *per se* violation of § 1 of

Alan L. Kovacs, Gerald J. Caruso, Ferriter, Scobbo, Sikora, Caruso & Rodophele, Boston, MA, for plaintiffs.

Jane L. Willoughby, Attorney General's Office, Boston, MA, for Defendants Stuart P. Krusell, Pamela M. Nourse, Massachusetts Alcoholic Beverages Control Com'n.

Thomas Fenerty, Eileen M. Fava, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Boston, MA, H. Glenn Alberich, LeBoeuf, Lamb, Greene & MacRae, Boston, MA, for Massachusetts Wholesalers of Malt Beverages, intervenor-defendant.

the Sherman Act which is not shielded from invalidation by the state-action immunity doctrine enunciated in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). On June 27, 1997, the Magistrate Judge issued a Report and Recommendation suggesting that summary judgment on this issue be granted to the defendants. After *de novo* consideration, for the reasons stated in the February 3, 1998 Memorandum and Order, this court decided that plaintiffs are entitled to summary judgment on their claim that the regulatory scheme at issue constitutes a *per se* violation of § 1 of the Sherman Act which is not immunized by the state-action doctrine.[1]

In response to the February 3, 1998 Memorandum and Order, the ABCC has informed the court that it does not now intend to appeal or to seek a stay of the forthcoming declaratory judgment invalidating M.G.L. c. 138, § 25A, lines 8–13, and the related regulations. As described below, in its proposed form of judgment, the ABCC for the first time has suggested that a portion of the regulations should be severed from those that are clearly invalid under this court's ruling and should be allowed to remain in effect. The ABCC has also reserved its right to utilize the 30–day period following entry of judgment provided by Fed.R.App.P. 4(a)(1) to decide finally whether to appeal. *See* State Defendants' Response to the Court's February 3, 1998 Order.

As confirmed and clarified at the March 12, 1998 hearing, however, the ABCC represents that it will voluntarily comply with the declaratory judgment during the pendency of any appeal, unless this court or the Court of Appeals for the First Circuit stays that judgment. As explained previously, considerations of comity make this federal court reluctant to issue an order restraining state or local officials unless that injunction is essential to attain compliance with a declaratory

judgment. *See, e.g.,* February 3, 1998 Memorandum and Order at 25 (citing *South Boston Allied War Veterans Council v. City of Boston,* 875 F.Supp. 891, 920 (D.Mass.1995)). Therefore, with the agreement of plaintiffs expressed at the March 12, 1998 hearing, the court finds that the requested injunctive relief is neither necessary nor appropriate.

The MWMBI, however, intends to appeal this court's decision. It has moved for a stay of the forthcoming declaratory judgment pending that appeal. Plaintiffs oppose this motion. The ABCC has declined to express a view on whether a stay should be granted.

There are, therefore, two questions which must be decided in connection with the entry of judgment. First is the recently raised question of the severability of portions of the regulations. Second is the issue of a stay. As set forth below, the court finds that the regulations are not severable and a stay is not appropriate.

## II. *Severability*

As indicated earlier, the issue of severability was raised for the first time in the proposed form of judgment filed by the ABCC. In its brief written submission, the ABCC proposes that the court only invalidate the references in the regulations to the requirements that prices posted be maintained for a month, particularly 204 C.M.R. §§ 603(3) and 6.05, and related references in §§ 6.01 and 6.04(5)(a). At the March 12, 1998 hearing, the ABCC indicated that, as a practical matter, it has raised this issue because it hopes to retain the requirement that price schedules be filed with the ABCC. As the parties recognize, the requirement in 207 C.M.R. § 2.14 that retailers be provided a price schedule reflecting the price, and any discount, offered by the wholesaler to other customers is not affected by this court's ruling. Thus, the primary issue presented is

---

1. The February 3, 1998 Memorandum and Order is a refinement of the analysis and holdings described orally at the January 26, 1998 hearing. As explained at the March 12, 1998 hearing, the February 3, 1998 Memorandum and Order authoritatively describes the issues decided and the court's reasoning concerning those issues. As suggested by the February 3, 1998 Memorandum and Order, upon reflection, because it is not

material to the outcome of the case, the court has not decided plaintiffs' request for summary judgment on their claim that even if the ABCC has the legal authority necessary to a finding of state-action immunity, it failed to actually exercise that power. *See* Feb. 3, 1998 Memorandum and Order, 24 and n. 8. Thus, Plaintiffs' Motion for Entry of [a] Supplemental Order on this issue (Docket No. 234) is being denied.

whether the pertinent lines of the regulations should, in effect, be edited by this court to separate the requirement that a price list be filed with the ABCC from the requirement that the filed prices be maintained for a month.

The ABCC is correct in contending that the February 3, 1998 Memorandum and Order does not hold that it would be impermissible for it to require the filing of wholesale price schedules because the court noted, at 13, that "merely exchanging price information, as the Massachusetts regulatory scheme in effect requires, is [not] a *per se* violation" of § 1 of the Sherman Act.[2] It is the coupling of the exchange of price information with the requirement that the posted prices be adhered to for 30 days that this court found constitutes the *per se* violation of § 1. *Id.* at 14.

However, the fact that the ABCC arguably had the legitimate authority to adopt regulations requiring the filing of wholesale price schedules does not resolve the issue of severability. Rather, to decide the issue of severability, the court must determine whether at the time of enactment the ABCC would have promulgated the portion of the regulations requiring the filing of wholesale price schedules with the Commission if it realized that it could not legally require that the prices filed be maintained for a month. *See Murphy v. Commissioner of Dep't of Indus. Accidents,* 418 Mass. 165, 169, 635 N.E.2d 1180 (1994); *Ackerley Communications of Mass., Inc. v. City of Cambridge,* 135 F.3d 210, 1998 WL 39234, at *5 (1st Cir. Feb.5, 1998). In this case, the ABCC has offered no affidavit or any other direct evidence suggesting that it would have done so. The relevant circumstantial evidence suggests that the ABCC regarded the filing and adherence provisions of the regulations as integrated elements of one organic whole. Thus, severance of these provisions by the court is inappropriate.

■ More specifically, the severability of portions of a state statute or regulation is a question governed by state law. *See Leavitt v. Jane L.,* 518 U.S. 137, 137–39, 116 S.Ct.

**2.** The February 3, 1998 Memorandum and Order does not address the issue of whether a requirement that wholesale price schedules be filed with

2068, 2069, 135 L.Ed.2d 443 (1996). Under Massachusetts law:

> When a court is compelled to pass upon the constitutionality of a statute and is obliged to declare part of it unconstitutional, the court, as far as possible, will hold the remainder to be constitutional and valid, if the parts are capable of separation and are not so entwined that the Legislature could not have intended that the part otherwise valid should take effect without the invalid part.

*Murphy,* 418 Mass. at 169, 635 N.E.2d 1180. In deciding severability, "[i]n appropriate circumstances, individual words may be struck." *Id.*

The Court of Appeals for the First Circuit has recently stated that:

> "Where a statutory provision is unconstitutional, if it is in its nature separable from the other parts of the statute, so that they may well stand independently of it, and if there is no such connection between the valid and the invalid parts that the (legislative body) would not be expected to enact the valid part without the other, the statute will be held good, except in that part which is in conflict with the Constitution." On the other hand, "[i]f the court is unable to know whether the Legislature would have enacted a particular bill without the unconstitutional provision, it will not sever the unconstitutional provision, but will strike the entire statute."

*Ackerley,* 135 F.3d 210, 215 (quoting *Mayor of Boston v. Treasurer & Receiver Gen.,* 384 Mass. 718, 725, 429 N.E.2d 691 (1981) (citation omitted)).

■ In this case, the regulations at issue contain a severability clause. Section 6.07 states that:

> The provisions of 204 C.M.R. 6.00, are severable, and if any provision or the application thereof is held by a court of competent jurisdiction to be invalid, such invalidity shall not effect any other provision of 204 C.M.R. 6.00, .

the ABCC would violate § 1 of the Sherman Act under a Rule of Reason analysis.

This provision, however, does not end the necessary inquiry. "Severability clauses, though probative of legislative intent, are not conclusive." *Ackerley*, 135 F.3d 210, 215 (citing *Reno v. ACLU*, —— U.S. ——, —— n. 49, 117 S.Ct. 2329, 2351 n. 49, 138 L.Ed.2d 874 (1997) ("[A] severability clause is 'an aid merely; not an inexorable command.'")). In some instances, a severability clause is insufficient to save statutes or regulations from complete invalidation. *Id.*

■ Section 6.07 does nothing to illuminate whether the ABCC would have enacted the requirement that price schedules be filed with it in the absence of the illegal requirement that the filed prices be maintained for a month. The remainder of the relevant evidence suggests that in promulgating the pertinent parts of § 6.00 *et seq.*, the ABCC viewed them as inextricably linked. The portions of the regulations requiring the filing of price lists with the ABCC and the maintenance of those prices for a month were neither drafted nor enacted separately. There is no evidence that the ABCC even considered the issues separately. Rather, the 1985 Opinion of the Attorney General addressing the then proposed regulations clearly indicates that the requirement that price lists be filed was primarily intended to implement the statutory requirement that the listed prices remain in effect for 30 days. Opinion of the Attorney General No. 6, 1985 WL 257997, at 1–2 (Mass.A.G., Feb. 4, 1985).[3] In these circumstances, the court must invalidate the price list filing provisions of the regulations because they are intertwined with the illegal price maintenance provision. *See Ackerley*, 135 F.3d 210, 214–16. *Cf. Massachusetts Wholesalers of Malt Beverages, Inc. v. Commonwealth*, 414 Mass. 411, 419, 609 N.E.2d 67 (1993) (ordering severance of illegal retroactive and permissible prospective requirements that abandoned bottle deposits escheat to state because, "[c]learly, the Legislature would have intended the amendment to have this less than immediate effect, rather than no effect at all"); *Murphy*, 418 Mass. at 170, 635 N.E.2d 1180 (explaining that the court had "no trouble concluding that the Legislature would have intended the impartial medical examina-

---

**3.** The Opinion of the Attorney General states, in pertinent part, that:

[T]he Commission proposes to adopt regulations requiring alcoholic beverages wholesalers to file a list of prices and discounts on the fifth day of the month preceding the month during which the prices will be in effect. The lists thus filed would be made available for public inspection, and between the fifth and fifteenth day of the month, any wholesaler would be permitted to amend downward any price or discount to meet, but not go below, competing prices or discounts for the same product.

I am informed that this plan represents little change in substance from current practice. Under existing regulations, wholesalers must distribute price and discount lists to their customers, and must file an affidavit with the Commission affirming that they have done so, before they sell to any retailer or wholesaler. 204 C.M.R. § 2.14. By statute, these lists must remain in effect for at least thirty days. G.L. c. 138, § 25A. By long-standing policy of the Commission, price and discount schedules must be filed with the Commission, and wholesalers are permitted to amend prices downward to meet competition in the same product. Thus, the proposed regulations are apparently intended to formalize the existing system.

    \*     \*     \*

You propose to adopt the above-described regulations to implement G.L. c. 138, § 25A, which provides as follows:

No licensee authorized under this chapter to sell alcoholic beverages to wholesalers or retailers shall discriminate, directly or indirectly, in price, in discounts for time of payment or in discounts on quantity of merchandise sold, between one wholesaler and another wholesaler, or between one retailer and another retailer purchasing alcoholic beverages bearing the same brand or trade name and of like age and quality.

All price lists or price quotations made to a licensee by a wholesaler shall remain in effect for at least thirty days after the establishment of such price list or quotation. Any sale by a wholesaler of any alcoholic beverages at prices lower than the price reflected in such price list or quotation within such thirty day period shall constitute price discrimination under this section.

Opinion of the Attorney General No. 6, 1985 WL 257997, at 1–2 (Mass.A.G., Feb. 4, 1985) (footnotes omitted).

tion provisions [of the Workman's Compensation statute] to stand even if the [invalidated] fee provision was determined to be constitutionally barred" because the "primary purpose [of the statute] was to streamline the worker's compensation process by eliminating the so-called 'dueling doctors' phenomenon").

Although not mentioned by the ABCC in its written submission or at the March 12, 1998 hearing, there are other provisions of § 6.00 *et seq.* which involve more than the filing of price lists with the ABCC and the maintenance of those prices. For example, § 6.04(5)(b) permits a wholesaler to offer a reasonable discount to retailers who pick up items at the wholesaler's warehouse and establishes a one-percent cap on any such discount. Although this provision is related to the requirements that wholesale prices be filed and maintained for a month, it could perhaps be argued that the ABCC might also have promulgated this provision to make clear that a one-percent pick-up discount would not be deemed a violation of the general prohibition on price discrimination in M.G.L. c. 38, § 25A that has not been invalidated. On the present record, however, the court cannot determine whether the ABCC would have promulgated this—or any comparable requirements in § 6.00 *et seq.*—without the provisions of the regulations that are invalid. Thus, the regulations contained in § 6.00 *et seq.* are being struck down in their entirety. *See Ackerley,* 135 F.3d 210, 215–16.

Although the regulations are now being invalidated in their entirety, the ABCC has the power, under M.G.L. c. 30A, to reissue portions of them that would, under this court's analysis, not be illegal if the ABCC decides that doing so would be in the public interest. If appropriate findings are made, it appears that such regulations could be issued promptly on an emergency, interim basis. *See* M.G.L. c. 30A, § 3. In the circumstances of this case, it is necessary and appropriate that the ABCC, rather than this federal court, decide whether any portion of the invalidated regulations that would not alone violate the Sherman Act serves the public interest and, therefore, should be reinstituted. *See Ackerley,* 135 F.3d 210, 214–16.

### III. *The Stay*

As described earlier, the MWMBI intends to appeal this court's decision and, pursuant to Fed.R.Civ.P. 62(c), moves for a stay of the declaratory judgment to be entered which would allow the existing regulatory scheme to remain in effect during the pendency of its appeal. The ABCC neither intends to appeal nor requests a stay pending the MWMBI's appeal. Plaintiffs oppose the motion for a stay. The ABCC has expressed no view on whether a stay would be in the public interest. *See* State Defendants' Response to Court's February 18, 1998 Order.

■ The Supreme Court has stated that the factors regulating the issuance of a stay pending appeal "are generally the same" for a district court and for a court of appeals. *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). These factors are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.*

■ The first prong of this test has not been interpreted or applied literally, even by the Courts of Appeals. Rather, it has been held that:

> on motions for stay pending appeal the movant need not always show a "probability" of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.

*Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir. 1981) (citing *Providence Journal Co. v. Federal Bureau of Investigation,* 595 F.2d 889, 890 (1st Cir.1979) ("Where ... the denial of a stay will utterly destroy the status quo, irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an

absolute probability of success in order to be entitled to a stay.")). *See also Garcia–Mir v. Meese,* 781 F.2d 1450, 1453 (11th Cir.1986); 11 Wright, Miller & Kane, *Federal Practice and Procedure* § 2904, at 503 & n. 11 (2d ed. 1995 & Supp.1997).

When the request for a stay is made to a district court, common sense dictates that the moving party need not persuade the court that it is likely to be reversed on appeal. Rather, with regard to the first prong of the *Hilton* test, the movant must only establish that the appeal raises · serious and difficult questions of law in an area where the law is somewhat unclear. *See Exxon Corp. v. Esso Worker's Union, Inc.,* 963 F.Supp. 58, 60 (D.Mass.1997); *Gay Lesbian Bisexual Alliance v. Sessions,* 917 F.Supp. 1558, 1561 (M.D.Ala.1996); *Mamula v. Satralloy, Inc.,* 578 F.Supp. 563, 580 (S.D.Ohio 1983); *Evans v. Buchanan,* 435 F.Supp. 832, 844 (D.Del. 1977).

■ This case involves a sufficiently serious issue of law to satisfy the threshold requirement for a stay. The operation of the other *Hilton* factors, however, persuades the court that a stay pending appeal is not justified.

More specifically, there are only two reported Court of Appeals decisions addressing regulatory schemes for wholesale liquor pricing similar to the scheme invalidated by this court, and those decisions differ. *Compare Miller v. Hedlund,* 813 F.2d 1344, 1351 (9th Cir.1987), *cert. denied,* 484 U.S. 1061, 108 S.Ct. 1018, 98 L.Ed.2d 983 (1988) (invalidating comparable regulatory scheme) *with Battipaglia v. New York State Liquor Auth.,* 745 F.2d 166, 175 (2d Cir.1984), *cert. denied,* 470 U.S. 1027, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985) (upholding similar regulatory scheme). As discussed in the February 3, 1998 Memorandum and Order, at 6, 12, n. 6, and 18, there was a cogent dissent by Judge Ralph Winter in *Battipaglia,* 745 F.2d at 179–80, and, significantly, the Second Circuit decided that case before the Supreme Court's illuminating decisions in *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), *324 Liquor Corp. v. Duffy,* 479 U.S. 335, 107 S.Ct. 720, 93 L.Ed.2d 667 (1987), and

*FTC v. Ticor Title Ins. Co.,* 504 U.S. 621, 112 S.Ct. 2169, 119 L.Ed.2d 410 (1992). Nevertheless, this court finds that this case presents a sufficiently serious legal issue to require consideration of the remaining *Hilton* factors.

■ The other *Hilton* factors do not, however, weigh heavily in favor of a stay. Rather, they favor denying a stay.

There is no evidence that the MWMBI, or its members, will be irreparably harmed if a stay is not granted. If the requirements of price posting and maintenance for a month are suspended pending appeal, liquor wholesalers will still be prohibited from engaging in illegal price discrimination by the remaining, valid portion of M.G.L. c. 138, § 25A, and by the federal Robinson–Patman Act, 15 U.S.C. § 13. They will, however, be permitted, and presumably required, to engage in non-discriminatory price competition, like the wholesale distributors of other consumer products such as food and furniture. "The mere existence of competition is not irreparable harm, in the absence of substantiation of severe economic impact." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 n. 3 (D.C.Cir.1977). There is, however, no evidence in this case that any wholesaler of alcoholic beverages is likely to go out of business or otherwise be severely impacted if the current regulatory scheme is invalidated pending appeal. *Cf. Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (holding that issuance of preliminary injunction was not abuse of discretion where "absent preliminary relief [respondents] would suffer a substantial loss of business and perhaps even bankruptcy"); *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205 (2d Cir.1970) (holding threat to existence of business constitutes irreparable harm).

Nor is this a case where the harm appellants fear will irrevocably occur before their appeal can be decided on its merits. *Compare Providence Journal Co.,* 595 F.2d at 890 (granting stay because permitting publication of information at issue would destroy appellants right to meaningful review of denial of injunction against publication); *Buntzman v.*

*Springfield Redev. Auth.*, 918 F.Supp. 29, 30 (D.Mass.1996) (granting stay because if city was permitted to sell property, court of appeals would be deprived of opportunity to grant appellants' request that the property be returned to him); *United States v. Western Elec. Co., Inc.*, 774 F.Supp. 11, 12–13 (D.D.C.1991) (granting stay because court persuaded that "massive confusion would be caused in the information services market— one that is central to the American economy—if the Regional [telephone] companies were permitted to enter that market upon dissolution of the stay but were required to exit that market following an unfavorable Court of Appeals decision").

Finally, the MWMBI asserts that if the price maintenance scheme found by this court to be invalid is not maintained during the pendency of its appeal there will be "(a) substantial increase in violations of the [remaining] price discrimination provisions [of § 25A] ... [and] (b) a marketplace in which wholesalers who obey the price discrimination law are placed in an uncompetitive position ..." February 23, 1998 Affidavit of Frank B. Sousa, Jr., ¶ 8. This is an anomalous argument. The MWMBI in effect contends that it is entitled to a stay because without one, some of its members will violate the law and, in the process, injure its other, law abiding members. This is not, however, a justification for the granting of extraordinary, judicial relief. Rather, if the MWMBI's fears are well-founded, it should both discourage all of its members from violating the law and urge the ABCC to enforce aggressively the remaining anti-price discrimination provisions of M.G.L. c. 38, § 25A against any of its members who do not comply with them.

With regard to the effect on other parties, the court finds that granting a stay would not greatly injure the plaintiffs. Rather, a stay would merely perpetuate pending appeal a regulatory system under which it appears that plaintiffs have been able to operate profitably, although not as profitably as they expect to operate if non-discriminatory price competition is permitted.

Although the remaining party, the ABCC, has remained silent on the issue of a stay, it appears that a stay would have an adverse impact on it. A stay would, in effect, constitute a mandatory injunction requiring the ABCC to enforce a price maintenance system it no longer wishes to defend. As described in the February 3, 1998 Memorandum and Order, at 25, considerations of comity regularly cause this federal court to be reluctant to issue injunctions requiring state officials to obey the law—as this court has declared it— unless it has been shown that it is necessary to do so. These same considerations make the court particularly reluctant to enter an order that would require the ABCC to enforce a price maintenance scheme that this court has found to be illegal—a decision which the ABCC now accepts.

The fact that the ABCC is not seeking a stay pending appeal distinguishes this case from several of those on which the MWMBI relies. *See Marshall v. Barlow's, Inc.*, 429 U.S. 1347, 1348, 97 S.Ct. 776, 50 L.Ed.2d 739 (1977) (granting stay where Secretary of Labor appealed portion of Occupational Health and Safety Act); *Hechinger v. Metropolitan Washington Airports Auth.*, 845 F.Supp. 902, 909–10 (D.D.C.1994) (granting stay where United States and a public authority appealed invalidation of act establishing a Board of Review for an airport and airport will be irreparably harmed absent a stay).

In any event, the court finds that the public interest will be served by denying the requested stay. In the absence of a stay, it will remain a violation of both federal and state law for a wholesaler of alcoholic beverages to discriminate in the price it charges to retailers. *See* Robinson–Patman Act, 15 U.S.C. § 13; M.G.L. c. 138, § 25A, lines 1–7. Contrary to the MWMBI's contention, the ABCC should be able to enforce this prohibition in the absence of a stay. Wholesalers must still provide price schedules to retailers and not offer any discount that is not reflected on such schedules. *See* 204 C.M.R. § 2.14. It is foreseeable that retailers will continue to inform the ABCC of possible illegal price discrimination. *See* March 2, 1998 Affidavit of Richard F. Hurley, § 40. Wholesalers must maintain detailed records concerning all sales. *See* 27 C.F.R. § 194.226. If these regulations are not

deemed by the ABCC to be adequate to enforce M.G.L. c. 38, § 25A's still valid general prohibition against price discrimination, it may, within the legal limits on its power, promulgate additional regulations. Thus, the ABCC, as well as private and federal authorities, should be able to enforce the state and federal prohibitions against discriminatory pricing during the pendency of the MWMBI's appeal.

In the absence of a stay, non-discriminatory price competition among wholesalers of alcoholic beverages will be permitted. As explained in the February 3, 1998 Memorandum and Order, at 3 and 22, the Supreme Court has repeatedly reiterated that the Sherman Act is founded on the fundamental premise that such competition serves the public interest by yielding "the best allocation of our economic resources, the lowest prices, and highest quality, and the greatest material progress." *Northern Pacific Ry. Co. v. United States*, 356 U.S. 1, 4, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958). *See also Ticor*, 504 U.S. at 636 (stating that the Supreme Court had been, and would be, "adhering in most cases to fundamental and accepted assumptions about the benefits of competition within the framework of the antitrust laws").

The United States Federal Trade Commission, an agency of the federal government responsible for pursuing the public interest in this area of the law, has supported the plaintiffs' successful effort to have the Massachusetts price maintenance laws at issue in this case declared invalid. *See* Statement of Phoebe Morse, Director of Boston Regional Office, Federal Trade Commission, dated June 26, 1996 (App. to Whitehall's Motion for Summary Judgment, Exh. C). The Federal Trade Commission's Massachusetts counterpart for present purposes, the ABCC, no longer takes a contrary position.

Therefore, this court finds that denying the requested stay will serve the public interest. For all of the foregoing reasons, the MWMBI's request for a stay pending appeal is being denied.

## IV. *Order*

Accordingly, it is hereby ORDERED that:

1. Plaintiffs' Motion for Entry of Supplemental Order Prior to Entry of Judgment (Docket No. 234) is DENIED;

2. The State Defendants' request that only a portion of 204 C.M.R. §§ 6.00–6.07 be deemed invalid is DENIED;

3. The MWMBI's Motion for a Stay Pending Appeal (Docket No. 226) is DENIED; and

4. Judgment shall enter forthwith consistent with the February 3, 1998 Memorandum and Order and this Memorandum and Order.

## JUDGMENT

For the reasons stated in the Memoranda and Orders dated February 3, 1998 and March 18, 1998, it is hereby DECLARED, pursuant to 28 U.S.C. § 2201, that:

1. Massachusetts General Laws, Chapter 138, § 25A, lines 8–13, as they appear in the 1996 Official Edition of the General Laws of Massachusetts, a copy of which is attached hereto as Exhibit 1, violates the Supremacy Clause of the United States Constitution and therefore is invalid and unenforceable.

2. 204 Code of Massachusetts Regulations §§ 6.00–6.07, a copy of which is attached hereto as Exhibit 2, violate the Supremacy Clause of the United States Constitution and therefore are invalid and unenforceable.

## EXHIBIT 1

**138:25A. Discrimination in prices and discounts prohibited.**

Section 25A. No licensee authorized under this chapter to sell alcoholic beverages to wholesalers or retailers shall—

(a) Discriminate, directly or indirectly, in price, in discounts for time of payment or in discounts on quantity of merchandise sold, between one wholesaler and another wholesaler, or between one retailer and another retailer purchasing alcoholic beverages bearing the same brand or trade name and of like age and quality;

*[There is no clause (b).]*

All price lists or price quotations made to a licensee by a wholesaler shall remain in ef-

fect for at least thirty days after the establishment of such price list or quotation. Any sale by a wholesaler of any alcoholic beverages at prices lower than the price reflected in such price list or quotation within such thirty day period shall constitute price discrimination under this section.

## EXHIBIT 2

### 204 CMR 6.00: ALCOHOLIC BEVERAGES CONTROL COMMISSION

204 CMR 6.00: PRICE POSTING (WHOLESALERS)

Section

6.01: Definitions

6.02: Application

6.03: Posting

6.04: Discounts

6.05: Amendments

6.06: Records

6.07: Severability

*6.01: Definitions*

Net Price: means the price of an item to the retailer after all discounts have been applied.

Specialized Publication: means a publication (journal, magazine or other periodical) which specializes in issues relating to the alcoholic beverages industry, and which publishes wholesalers' monthly price lists.

*6.02: Application*

The provisions of 204 CMR 6.00, shall be deemed to be a condition of a wholesaler's license to sell alcoholic beverages to a retailer.

*6.03: Posting*

(1) For purposes of 204 CMR 6.03, "item" shall mean a case of distilled spirits product identified by brand or trade name and by the name of the distiller, size of containers, age and proof (if stated on the label), and number of containers in the case; or a case of wine identified by brand or trade name; or a case malt beverages identified by brand or trade name.

(2) No wholesaler shall sell to any retailer, and no retailer shall purchase from any wholesaler, any brand of alcoholic beverages unless a price list shall have been furnished by the wholesaler to the retailer and the original of such price list shall have been filed with the Commission, in the manner hereinafter provided.

(3) A copy of each wholesaler's price list shall be furnished to each retailer prior to the month in which the prices. and discounts set forth in such price list are to be effective. The original of the price list shall be filed with the Commission no later than 5:00 p.m. on or before the fifth day of each month and only those prices and discounts set forth therein, or amended in accordance with the provisions of 204 CMR 6.05, shall become effective on the first day of the calendar month following the filing of such price list and shall be in effect for that calendar month only. A new complete price list shall be filed by wholesalers each month.

(a) When the fifth day of the month falls on a Saturday, Sunday or legal holiday, the price list shall be filed with the Commission no later than 5.00 p.m. on the next business day.

(b) Price schedules which are not filed within the time limits stated above shall be rejected by the Commission and the wholesaler's price list then in effect shall be the price list effective for the next 30 day period.

(c) Prices of new items may be filed with the Commission at any time.

(4) Each price list shall identify the wholesaler filing it by name, address and license number and shall be in the form prescribed by the Commission.

(5) Each price list shall contain, with respect to each item, the exact brand or trade name, size of containers, nature of contents, age and proof (if stated on the label), number of containers in a case, price of a container, all discounts and net price of the item to retailers.

(a) Discounts shall be stated in American monetary terms only.

(b) All prices and discounts shall be individual for each item and not in combination with any other item.

(c) All of the foregoing information shall be set forth in the body of the price list, in columns immediately adjacent to the listing of the individual item to which it relates.

(6) A wholesaler shall be deemed to be in compliance with the requirement of furnishing his price list to each retailer whether he uses the direct mail method or causes his prices to be published, within the time prescribed for the filing of such price list with the Commission, in a specialized trade publication approved by the Commission.

## 6.04: Discounts

(1) For purposes of 204 CMR 6.04, an item of distilled spirits shall be deemed to be different from another item if the name of the distiller, or if the nature of the contents is different even if the brand or trade name is the same; and an item of wine or malt beverages shall be deemed to be different from another item if the brand or trade name is different (wine) or if the name of the brewer is different (malt beverages).

(2) Except as otherwise provided in 204 CMR 6.04(5), discounts may be offered by wholesalers to retailers only on the basis of quantities of each item purchased and/or on the basis of time of payment.

(3) *Quantity Discounts*

(a) *Distilled Spirits:* Wholesalers of distilled spirits may offer to retailers discounts based on the number of items of distilled spirits purchased. Any such quantity discount offered by a wholesaler to a retailer shall apply to items of individual products and not to a combination of items.

(b) *Malt Beverages:* Wholesalers of malt beverages may offer to retailers discounts based on the number of items of malt beverages purchased. Any such quantity discount offered by a wholesaler to a retailer shall apply to items of individual products and not to a combination of items.

(c) *Wines:* Wholesalers of wines may offer to retailers discounts based on the number of items of wine purchased, whether or not such items of wine are purchased in combination.

(4) *Time of Payment Discounts:* Wholesalers may offer to retailers discounts for payments made within ten days from the date of delivery which shall be clearly stated on the invoice.

(5) *Other Discounts*

(a) *Cumulative Discounts:* Notwithstanding the provisions of 204 CMR 6.04(2), within the same calendar month period during which prices and discounts are effective, a wholesaler may allow a retailer to accumulate his total purchases of items for purposes of obtaining a maximum quantity discount, provided that the wholesaler shall keep accurate records of all transactions resulting in the cumulative discount.

(b) *Pick-up Discounts:* Notwithstanding the provisions of 204 CMR 6.04(2), a wholesaler may offer a retailer a reasonable discount, not to exceed one percent, if the retailer picks up items ordered from the wholesaler at the wholesaler's warehouse.

## 6.05: Amendments

(1) Between the fifth and 15th day of the month prior to the effective date of the price filing, a wholesaler may amend his price filing to meet a specific lower price, or a specific greater discount for any individual item filed by any other wholesaler. However, under no circumstances may such amendment(s) cause the amending wholesaler's "net price" to be lower than the lowest "net price" filed by any other wholesaler for the same item.

(2) When an amendment is made, the entire page on which the amendment appears shall be filed with the Commission and the page shall indicate the name of the single wholesaler whose prices or discounts are being met and the individual item(s) affected.

(3) Amendments to price lists must be received at the Commission no later than

5:00 p.m. on the 15th day of the month preceding the effective date of such price lists. When the 15th day of the month falls on a Saturday, Sunday or legal holiday, amendments shall be filed no later than 5:00 p.m. on the next business day.

(4) The Commission shall reject any amendment not made in accordance with the provisions of 204 CMR 6.05.

### 6.06: Records

Wholesalers shall keep accurate records of all transactions governed by 204 CMR 6.00, and shall make such records available for inspection by agents or representatives of the Commission.

### 6.07: Severability

The provisions of 204 CMR 6.00, are severable, and if any provision or the application thereof is held by a court of competent jurisdiction to be invalid, such invalidity shall not affect any other provision of 204 CMR 6.00.

REGULATORY AUTHORITY

204 CMR 6.00: M.G.L. c. 6, §§ 43 and 44; M.G.L. c. 138, § 25A.